297 P.2d 893

A. R. LINFORD, Plaintiff-Respondent,

v.

G. H. HALL & SON, a copartnership composed of G. H. Hall and Eugene Hall, Defendants-Appellants.

Evelyn Hall INGALLS, Plaintiff-Appellant,

v.

A. R. LINFORD, Defendant-Respondent.

Stanley H. HALL, Plaintiff-Appellant,

v.

A. R. LINFORD, Defendant-Respondent.

Violet Hall GRIX, Plaintiff-Appellant,

v.

A. R. LINFORD and Federal Land Bank of Spokane, a Corporation, Defendants-Respondent.

Florence Hall BELL, Plaintiff-Appellant,

v.

A. R. LINFORD and Federal Land Bank of Spokane, a Corporation, Defendants-Respondent.

Nos. 8317–8321.

Supreme Court of Idaho.

May 14, 1956.

Rehearing Denied in Nos. 8318–8321

June 13, 1956.

Merrill & Merrill, Pocatello, for appellants.

O. R. Baum, Ruby Y. Brown, and Gee & Hargraves, Pocatello, for respondent.

ANDERSON, Justice.

Five separate cases are involved in this appeal, they having been consolidated for trial. All of them concern water rights and rights in a ditch in Thomas Creek Valley known as Circle Ditch.

Water from Thomas Fork Creek is carried southeasterly through Stevens-Larsen Ditch to the Circle Ditch, and the latter runs east, then south, crossing in succession the farm lands of Appellants Evelyn Hall Ingalls, Stanley H. Hall, Florence Hall Bell, and Violet Hall Grix. From the Grix property, the ditch continues south onto the land of Respondent A. R. Linford.

In 1951, respondent entered on the lands of the appellants, removed the headgate on the Bell property, and cleaned and deepened Circle Ditch. Soil taken from the ditch was piled in ridges along the ditch bank.

Respondent Linford filed suit against George H. Hall and his son, Eugene Hall, seeking an injunction to prevent them from taking any water out of Circle Ditch. He sought also to quiet title to 590 inches of water. The defendants in that action filed an answer and cross-complaint, setting out that Eugene Hall had been operating the Grix and Bell property several years as a lessee and was entitled to 60 inches of water from the Circle Ditch for said property; that plaintiff deprived him thereof in the years 1951 and 1952 to his damage in the sum of $1,000. Thereafter Evelyn

Hall Ingalls, Stanley H. Hall, Violet Hall Grix, and Florence Hall Bell, the other parties to this appeal, each filed a separate action for damage to his or her land, alleging the respondent had enlarged the ditch, piled up banks of earth on their lands, and removed the headgate serving the Grix and Bell properties. Mrs. Grix and Mrs. Bell also sought to quiet title to 30 miner's inches of water for each of their tracts.

For clarity, the original plaintiff, Linford, will be referred to throughout as respondent, and all of the other parties to the litigation as appellants.

The parties stipulated that respondent owns and succeeded to the right of his predecessors, John Stevens, J. W. Mumford and the Hart brothers, in and to 590 inches of water from Thomas Fork Creek. Halls admitted that they had their own decreed water right of 800 inches from Thomas Fork Creek and 40 inches from the Taylor Canal.

Appellants Evelyn, Stanley, Violet, and Florence each derive title from George H. Hall, each holding his or her property as sole and separate property.

In 1888 and 1889, George H. Hall; his brother, Mosiah Hall; and John Stevens constructed Circle Ditch. It was used to irrigate land owned by Stevens, a predecessor of respondent. Appellants contend that Stevens entered into an agreement at that time with George H. Hall and his brother, Mosiah, who then had an interest in the property, by which the Halls were to take 60 miner's inches of water from Circle Ditch to irrigate 60 acres of land owned by them and now belonging to Violet Hall Grix and Florence Hall Bell.

In 1902, the District Court of the Fifth Judicial District entered a decree establishing rights to the waters of Thomas Fork Creek. Respondent's predecessor was decreed the right to certain waters to be transferred through the Stevens-Larsen Ditch, but the decree did not mention Circle Ditch.

Appellants allege that at the time it was constructed Circle Ditch was three feet across and had a carrying capacity of about 150 inches. Approximately one-third of the water was diverted and used each year to irrigate the lands now owned by Appellants Violet Hall Grix and Florence Hall Bell. George H. Hall testified that he put a culvert in Circle Ditch in 1913 and that he installed a number of headgates, which rotted out and were replaced from time to time until 1946, when a galvanized headgate was installed on what is now the Grix property. Of the water taken from Circle Ditch, about 22½ inches was drainage water from higher parts of appellants' lands, which drained into Circle Ditch and was re-used.

After a trial before the Court, findings of fact, conclusions of law, and judgment and decree were entered in favor of respondent

Linford. Appellants appealed and set out 32 assignments of error. However, appellants in their brief state that the major questions involved in these lawsuits are the right of Violet and Florence to take from Circle Ditch 60 miner's inches of water to irrigate land owned by them, and the right of all the appellants to recover damages from respondent for deepening and widening Circle Ditch and piling large quantities of dirt on the banks thereof and causing a definite severance of one piece of land from the other, thus reducing the general value thereof, and tearing out a galvanized headgate, and in otherwise interfering with the irrigation of the lands of Mrs. Grix and Mrs. Bell.

In deciding these cases, four main questions seem to be determinative. They are: (1) Was there an agreement in 1888, at the time of the construction of the Circle Ditch, between the predecessors of respondent and appellants that appellants' predecessors should get 60 miner's inches of water from Circle Ditch? (2) If there was no such agreement, did the appellants Violet Hall Grix and Florence Hall Bell and their predecessors acquire a prescriptive right to 30 inches each for Violet and Florence, or a total of 60 inches of water, by adverse use? (3) What is the effect of the court decree of 1902, heretofore mentioned? (4) Have the appellants shown that they are entitled to damages? We will discuss each of these in turn.

There was some evidence by George H. Hall, 87 years of age, to the effect that 60 inches of water were to be given his land by John Stevens for the right of way through the property now owned by his children. If such an agreement ever existed, it appears to have been indefinite and not for any specific land.

At least from 1890 to 1945, the Halls ran water into Circle Ditch, and whenever their taking water out of this ditch was discussed, they stated they were merely using their own private water which they had put in elsewhere. The record discloses that when the water was measured at one time there was 22½ inches of seepage or drainage water belonging to Halls which they were recapturing. It is not disputed that they are entitled to recapture this water. It is settled law that seepage and waste water belong to the original appropriator, and, in the absence of abandonment or forfeiture, may be reclaimed by such appropriator as long as he is willing and able to put it to a beneficial use. Reynolds Irrigation Dist. v. Sproat, 70 Idaho 217, 222, 214 P.2d 880. Even respondent's ditch could be used to carry appellants' water, with proper measuring devices, if it did not injure nor interfere with use of the ditch by the owners of the easement, or if the ditch could be enlarged or changed at their own expense without increasing the burden of maintenance or changing the method of use of the owners

of the easement. Tomchak v. Harris, 54 Idaho 448, 32 P.2d 1025, 1026.

The evidence discloses that a flume crosses Circle Ditch, carrying appellants' water to irrigate the identical lands of appellants south of the ditch for which Violet and Florence are claiming 60 inches of water from Circle Ditch.

The trial court found that the appellants did not sustain the burden of proof, proving that there was such an agreement giving them 60 miner's inches of water from Circle Ditch. We find no error was committed in this regard.

Appellants do not contend any taking of the water was hostile, but rely upon permissive use. Such a use cannot ripen into a prescriptive right by adverse user. To perfect a prescriptive right, the use of water must be (1) actual, (2) open and notorious, (3) hostile and adverse, (4) continuous and uninterrupted for the statutory period, and (5) under a claim of title in the claimant and not by virtue of another right. 25 Cal.Jur. pp. 1157, 1158.

Halls have never shown that they used the water at any time when it was needed or demanded by respondent and his predecessors. They therefore failed in their proof of a prescriptive right to the use of the water by adverse use. Village of Fairview v. Franklin Maple Creek Pioneer Irr. Co., 59 Idaho 7, 17, 79 P.2d 531; Head v. Merrick, 69 Idaho 106, 108, 203 P.2d 608.

In the Fairview case, supra, this Court stated [59 Idaho 17, 79 P.2d 535]:

"* * * two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, *the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water;* the use does not become adverse until it interferes with the use thereof by the prior appropriators, *and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use.*"

The decree entered by the District Court of the Fifth Judicial District in 1902 did not make any mention whatever of the 60 inches of water now being claimed by Violet and Florence, so they would acquire no rights thereunder, and the fact that no mention is made in the decree adds further strength to the view that they had none by agreement or prescriptive right, or it would have been asserted at that time.

Relative to the extent of a ditch easement, this Court stated in the case of Gorrie v. Weiser Irrigation District, 28 Idaho 248, 253, 153 P. 561, 562:

"It is conceded that the defendant has acquired a right of way for said ditch or canal over the land of the plaintiff. The right to clean and maintain it is involved in the acquisition of it * * *. Due care, however, must be observed by the owner of the canal in the cleaning and maintenance of such canal across the land of plaintiff to do such work properly and not to occupy any more or greater width of land along the banks of the canal than is absolutely necessary for depositing the debris and other matter necessarily required to be taken from such canal to properly maintain and clean it. The owner of such ditch has the right to enter the land across which such right of way extends for the purpose of cleaning and repairing the ditch."

In Wiel, Water Rights, third edition, vol. 1, p. 539, it is stated:

"As the right to the ditch or other artificial watercourse is an easement, no change can be made against the landowner over whose land the ditch passes that is burdensome to the servient tenement, or that changes the character of the servitude; such as moving a ditch to a new place, or enlarging it."

◼ There is no contention that respondent does not have a right of way for Circle Ditch across Halls' land. Respondent could clean the ditch and put spoilage on the bank, but could not deepen and enlarge the ditch and dump new quantities of dirt, other than cleaning, upon the servient estate without being liable in damages. The dominant estate has no right to enlarge its easement merely by doing so.

The evidence discloses that prior to the operations of respondent, crops could be produced in most places up to the edge of the ditch bank. Before respondent cleaned and deepened the ditch, there was little substantial spoilage along the edge of the ditch, and appellants could mow up to and even extend the cutter bar over the edge. The ditch could be crossed at most places without a bridge, but they are now necessary in several if crossings are to be made.

◼ While respondent contends that the ditch was only cleaned and put in its original condition, the appellants contend that the ditch was deepened and enlarged, the deepening being from several inches to two or three feet. The findings of fact in each of the cases disclose that Circle Ditch was cleaned and *deepened* to provide a grade of one-half of a tenth of a foot (.005) per 100 feet. The evidence clearly supports the findings that the ditch was deepened.

The piles of dirt placed upon appellants' land not only occupied the land, but the unsightly view caused thereby damaged land not so occupied.

The evidence therefore seems clear and undisputed that the ditch was enlarged, by deepening at least, and the dirt therefrom piled upon appellants' land, although the evidence is conflicting as to whether the ditch was widened. Thus respondent took more land than his easement permitted him to, and caused appellants appreciable damage. The denial of damages was clearly against the weight of the testimony. The amount should be determined by the trial court, including damage to the headgate.

The appellant Eugene Hall, while he mentioned the headgate being torn out, asked for damages only in connection with loss of use of the 60 inches of water during the years 1951 and 1952, which the lower court found he was not entitled to, and in which respect we agree the Court was correct. The decree in this case will therefore be affirmed.

In each of the other cases the judgment and decree will be affirmed in all respects except as to damages, in which respect it is reversed and remanded, with directions to the trial court to determine the damages from the present record or by the taking of additional evidence in regard thereto if desired by the Court or either of the parties.

Costs to respondent in Linford v. Hall. In each of the other cases, costs to appellant.

TAYLOR, C. J., KEETON and SMITH, JJ., and BAKER, District Judge, concur.