808 P.2d 1289

**Dan ABBOTT and Joanne Abbott, husband and wife, Plaintiffs–Appellants,**

v.

**NAMPA SCHOOL DISTRICT NO. 131, a school district formed under the laws of the State of Idaho, Defendant–Respondent.**

No. 17964.

Supreme Court of Idaho.

Boise February 1990 Term.

Jan. 28, 1991.

Rehearing Denied April 29, 1991.

White, Ahrens, Peterson & Perry, P.A., Nampa, for plaintiffs-appellants. William A. Morrow, argued.

Elam, Burke and Boyd, Nampa, for defendant-respondent. William F. Yost, III, argued.

BOYLE, Justice.

In this property easement case we are called upon to determine whether a stranger to an easement may use the easement pursuant to a license agreement with the easement holder without obtaining the consent of the servient estate's owner so long as the burden on the servient estate is not enlarged.

Dan and Joanne Abbott are owners of a five acre parcel of land located on Greenhurst Road in Canyon County which is burdened by an irrigation ditch easement (hereinafter "Savage Lateral") granted to the Nampa–Meridian Irrigation District. Defendant Nampa School District No. 131 owns property across from Abbotts on

Greenhurst Road which is similarly burdened by the irrigation ditch easement. At the time this case was heard by the trial court, the School District was in the process of constructing an elementary school on property located approximately one-quarter mile north of Greenhurst Road. As part of its construction plan for the elementary school, the School District obtained permission from the irrigation district to place the Savage Lateral in an underground pipe to improve the appearance and value of the school property and to remove the open ditch as a possible safety hazard to school children.

The School District entered into a license agreement with the Irrigation District which provided that the project would be constructed at the expense of the School District. The plans for the project were approved by the Irrigation District and called for the relocation of the culvert under Greenhurst Road, changing its crossing from a diagonal crossing to a right angle crossing. The plans also called for construction of a concrete inlet structure and a safety/trash screen for the irrigation ditch to be located on the Abbotts' property.

The School District began construction of the project on the Abbott property within the confines of the easement without notifying or obtaining the prior consent of the Abbotts. The Abbotts brought this action to prevent the construction of the concrete inlet structure and screen alleging that the irrigation district did not have authority to convey a license to the school district to install the concrete inlet structure and safety screen on their property, and that the burden of the easement was enlarged to the detriment of their property. The Abbotts obtained a temporary restraining order, however the district court thereafter dissolved the temporary restraining order and declined to issue a preliminary injunction. After the parties agreed to consolidate the hearing on the preliminary injunction with a trial on the merits, the district court heard the evidence, issued a final judgment in favor of the school district and

granted the school district an award of attorney fees and costs pursuant to I.C. § 12–121.

## I.

### *Appellants' Argument on Appeal*

Abbotts contend that the School District trespassed when it altered the Savage Lateral on Abbotts' property because the school district did not obtain their consent, and the license granted the school district exceeded the scope of the easement. Abbotts maintain that the license agreement between the Irrigation District and the School District merely states that the school district desired to make modifications to the ditch or canal across the school district property and the only mention of any planned construction on Abbott's property is in an exhibit to the license agreement. Furthermore, Abbotts point out that the license agreement specifically states that the construction is only to benefit the School District and is not for the benefit of the Irrigation District. Abbotts, therefore, argue that the license is invalid in so far as it gives the School District authority to place the inlet and safety screen on Abbotts' property. Furthermore, Abbotts complain that the school district does not have the right to place an attractive nuisance on their property merely because the irrigation district gave its consent to place it within the easement.

Abbotts also express concern that the district court did not consider that the safety screen will build up with debris and cause the ditch to back up and flood their property or that the concrete inlet structure located in their front yard is unsightly and causes a devaluation of their property. Abbotts claim that the devaluation as well as the unsightly mess created by the concrete structure improperly expands and exceeds the scope of the easement, especially when the license agreement specifically states that the Irrigation District will not benefit from the construction.

Further, Abbotts argue that the license agreement inappropriately delegated the

statutory responsibilities of the Irrigation District to the School District in violation of I.C. § 43–304.

On appeal Abbotts claim that the district court failed to understand the case before it and that it failed to address the specific question of whether the School District had the right to enter Abbotts' property and construct the concrete collar and safety screen.

## II.

### Findings of District Court

The record clearly reflects that the modifications to the Savage Lateral made by the School District, including placement of the inlet structure and safety screen, were contained entirely within the boundaries of the irrigation district's easement and were located within the actual ditch on Abbotts' property. In this action the district court determined:

> The *modifications* made to the Savage Lateral *do not constitute an enlargement of the use or an unreasonable increase in the burden of the easement on the subservient estate.* The placing of an irrigation ditch into a buried pipe is certainly a standard practice in this area and is not a peculiar or unusual undertaking.

(Emphasis added.) The trial court concluded:

> So long as the School District is willing to bear the cost of the project and any increased maintenance costs, and so long as the completed pipeline is totally adequate for the Irrigation District's purposes it would be difficult for the Irrigation District to refuse permission to bury the ditch in a pipeline. The same would be true if the plaintiff desired to bury the ditch across their property at their own cost and expense. The real effect of the License Agreement is not to allow the Defendant to place the ditch into a pipeline; the plaintiff [defendant] has that right already. The purpose of the li-

cense agreement is to protect the Irrigation District's right to absolutely control any modification or alteration of the Irrigation District's lateral ditch. Thus, aside from any question of collateral attack, the issuance of the license agreement is entirely within the province of the Board of Directors of the Irrigation District and is in the best interest of the district.

The district court determined that the School District had the right to put the irrigation ditch underground and that the modifications made to the Savage Lateral did not constitute an enlargement of the use or an unreasonable increase in the burden on the servient estate.

## III.

### Scope of Judicial Review

A review of the record, although containing conflicting evidence, does not persuade us that the trial court's factual findings concerning the easement should be disturbed on appeal.

In our review of a trial court decision the respective roles assigned to the courts must be kept in mind. At the trial court level the trier of fact, in this case the district court judge, is the arbiter of conflicting evidence. *Rankin v. Rankin,* 107 Idaho 621, 691 P.2d 1236 (1984). It is the province of the district judge as the trier of fact to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. I.R.C.P. 52(a); *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985); *Glenn v. Gotzinger,* 106 Idaho 109, 675 P.2d 824 (1984); *Jensen v. Westberg,* 115 Idaho 1021, 772 P.2d 228 (Ct.App.1988). In view of this role, the trial court's findings of fact will be liberally construed in favor of the judgment entered. *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982). It is well established that a trial court's factual findings which are based on substantial although conflicting evidence will not be disturbed on appeal. The credibility

and weight to be given evidence is in the province of the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous. *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985); *MacNeil v. Minidoka Memorial Hosp.,* 108 Idaho 588, 701 P.2d 208 (1985).

Our review of the record satisfies us that the findings of the trial court are based on substantial, competent evidence and will not be disturbed on appeal. The trial court expressly found that the school district's use of the easement did not constitute an enlargement of the use or an unreasonable increase in the burden of the easement on the servient estate. Our review of the record does not demonstrate that the findings made by the trial court are clearly erroneous and accordingly will not be set aside on appeal.

## IV.

### *Scope of Easements*

■ Having concluded that the trial court's findings are supported by substantial, albeit conflicting evidence, we now address whether the trial court applied an incorrect legal standard to the facts presented herein. It is well established in this jurisdiction that an easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Sinnett v. Werelus,* 83 Idaho 514, 365 P.2d 952 (1961). In *Coulsen v. Aberdeen–Springfield Canal Co.,* 47 Idaho 619, 277 P. 542 (1929), this Court stated:

> The use to which a right of way is devoted or for which it is created, determines the character of title with which the holder is invested. The character of the use or the necessity of complete dominion determines the extent to which he is entitled to possession. No greater title or right to possession passes under a general grant than reasonably necessary to enable the grantee to adequately and conveniently make the intended use of his way.

47 Idaho at 626, 277 P. at 544.

■ Thus, the general rule concerning easements is that the right of an easement holder may not be enlarged and may not encompass more than is necessary to fulfill the easement. *Id.* In *Merrill v. Penrod,* 109 Idaho 46, 704 P.2d 950 (Ct.App.1985), the Idaho Court of Appeals observed that an easement does not include the right to enlarge the use to the injury of the servient land.

> The use of an easement claimed under a grant or reservation must be confined strictly to the purposes for which it was granted or reserved, and in compliance with any restrictions imposed by the terms of the instrument. Where the grant or reservation of an easement is general in its terms, use of the easement includes those uses which are incidental or necessary to the reasonable and proper enjoyment of the easement, but is limited to those that burden the servient estate as little as possible. In other words, an easement granted or reserved in general terms, without any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for those purposes to which that estate may be subsequently devoted. Thus, there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment.

25 *Am.Jur.2d Easements and Licenses* § 74, pp. 479–80 (1966).

■ The degree of change that will be allowed in the use of an easement differs with the manner in which the easement was conveyed, the language of conveyance, and the use of the servient estate before and after the conveyance. *See 5 Restatement of Property* § 483, p. 3010 (1944).

In *Boydstun Beach Ass'n v. Allen,* 111 Idaho 370, 723 P.2d 914 (Ct.App.1986), the Idaho Court of Appeals applied the following rule to an easement: "The rule is that, absent language in the easement to the contrary, the uses made by the servient and dominant owners may be adjusted con-

sistent with the normal development of their respective lands." 111 Idaho at 378, 723 P.2d at 922.

In *Coulsen* this Court indicated that the extent and scope of an easement for canals and ditches is different from other easements such as railroad rights of way. The Court stated:

> Railroad rights of way are distinguished from other ways principally, if not entirely, by the difference in use. There is not the same necessity for exclusive possession of a right of way by canal companies as by railroads. The reasons for according to railroads the right to the exclusive possession are not applicable to canal companies. [citation omitted]. The use of right of way for a ditch or canal does not require the exclusive possession of, or complete dominion over, the entire tract which is subject to the "secondary" as well as the principal easements.

47 Idaho at 627, 277 P. at 544–45.

The Court in *Coulsen* further indicated that a canal or ditch constructed or granted pursuant to an original U.S. patent was only for the purposes of said canal or ditch, and then only so far as may be necessary for the construction, maintenance and care of said canal or ditch and that "[n]o greater burden was to be placed upon the servient tenement than reasonably necessary for the exercise of the right." 47 Idaho at 628, 277 P. at 545.

In *Linford v. G.H. Hall & Son,* 78 Idaho 49, 297 P.2d 893 (1956), this Court stated a general rule regarding the scope of a ditch or canal easement:

> As the right to the ditch or other artificial watercourse is an easement, no change can be made against the landowner over whose land the ditch passes that is burdensome to the servient tenement, or that changes the character of the servitude; such as moving a ditch to a new place, or enlarging it.

78 Idaho at 55, 297 P.2d at 896. The Court in *Linford* then applied the rule to a ditch easement obtained by prescription.

> Respondent could clean the ditch and put spoilage on the bank, but could not deepen and enlarge the ditch and dump new quantities of dirt, other than cleaning, upon the servient estate without being liable in damages. The dominant estate has no right to enlarge its easement merely by doing so.

78 Idaho at 55, 297 P.2d at 896.

In Idaho easements for irrigation laterals are also subject to the servient estate owner's right to move the lateral at his own expense. Idaho Code § 42–1207 allows such a change when it does not impede the flow of water or injure any person using the lateral ditch.[1]

Other jurisdictions have allowed owners of canal and ditch easements to make various changes in the nature of the ditch, including the cementing and waterproofing of ditches, *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148 (1946), and lining of a ditch with concrete, *Papa v. Flake,* 18 Ariz.App. 496, 503 P.2d 972 (1972). However, in *Krieger v. Pacific Gas & Elec. Co.,* 119 Cal.App.3d 137, 173 Cal.Rptr. 751 (1981), the California Court of Appeals held that lining an earthen ditch, obtained from an original U.S. patent with gunite, exceeded the scope of the easement holder's easement rights and was not within the scope of secondary easement of repairs.

These "secondary easements" include the right to repair and maintain the primary easement and cannot be used to enlarge the burden to the servient estate. Such easements are to be "exercised only when necessary and in such a reasonable

---

1. We note that I.C. § 42–1207 gives the School District the right to place the ditch underground on its property. Furthermore, it gives Abbotts the right to move the cement inlet collar and safety screen on their land to another location if the requirements of the statute are met. Thus, Abbotts may at their own expense move the collar and trash screen to the back of their property where it would be less offensive to them.

manner as not to increase needlessly the burden on ... the servient estate." 25 *Am.Jur.2d Easements and Licenses* § 86, p. 493 (1966). Thus, the Irrigation District could make modifications to the irrigation ditch and its location within the bounds of the easement grant so long as it does not unreasonably increase the burden on Abbotts' property. It is clear that if the Irrigation District desired to place a concrete inlet collar and safety screen on Abbotts' property it could properly do so as long as it did not unreasonably increase the burden to Abbotts' property.

The trial court expressly found and concluded that the placement of the irrigation ditch in an underground pipe was not an unusual occurrence and expressly found that the modifications, including the cement collar and safety screen, were within the scope of the easement and did not enlarge the use of the easement or constitute an unreasonable increase in the burden of the easement on the servient estate. On this issue the trial court applied correct law to the evidence presented. The trial court's findings are not clearly erroneous and will not be disturbed on appeal.

## V.

### Use of Easement By Third Party

Although it is clear that the Irrigation District could make modifications to the ditch, it is unclear whether an easement holder may grant a license to third party to use the easement for its own purposes. While the district court held that the modifications made to the Savage Lateral do not create an additional burden to the servient estate, the district court failed to make an express determination of whether the school district had the right pursuant to the license agreement with the Irrigation District to make the modifications to the lateral on Abbotts' land. Since this is a question of law, we will exercise free review.

■ This is an issue of first impression in this state. In this case the irrigation

ditch easement is granted to the Irrigation District. As such it does not serve any land directly and is an easement "in gross." The difference between an easement appurtenant and an easement "in gross" is summed up as follows:

An easement ... "appurtenant" is one whose benefits serve a parcel of land. More exactly, it serves the owner of that land in a way that cannot be separated from his rights in the land. It in fact becomes a right in that land and, as we shall see, passes with the title. Typical examples of easements appurtenant are walkways, driveways, and utility lines across Blackacre, leading to adjoining or nearby Whiteacre.

Easements ... "in gross" are those whose benefits serve their holder only personally, not in connection with his ownership or use of any specific parcel of land.... Examples are easements for utilities held by utility companies, street easements, and railroad easements.

R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* § 8.2, p. 440 (Hornbook Series Lawyer's Edition (1984)); *see also Nelson v. Johnson,* 106 Idaho 385, 679 P.2d 662 (1984).

■ Easements in gross are personal to the holder, and determining whether a third party's use of that easement is an enlargement of the easement can be a difficult question. The authors of *The Law of Property* state the following:

For easements or profits in gross, which have no dominant tenement, the corresponding question is whether they may be divided or apportioned by being transferred to more than one person.... The underlying problem is that, to allow more than one person to use an easement or to exploit a profit when it was created for only one, may work a surcharge or additional burden upon that granted. The key to solving the problem is to determine what is the "measure" of the easement or profit.

When the grantee received an "exclusive" easement or profit, the right to

make sole use of the easement or to take all of a substance from the land, then he may transfer to as many other persons as he wishes. No surcharge is worked by the division because any number of grantees cannot use any more than was granted; the measure was "all." Similarly, it should follow that if the creating instrument established an absolute measure less than all, such as so many passages per day or so many tons of rock per day, the right may be divided. Usage by the several grantees could not exceed that granted.

Divisibility problems are acute when the easement or profit is not exclusive and does not contain an absolute measure. Examples are "an easement of passage" or "a right to remove rock." Courts sometimes say flatly that a nonexclusive easement of profit is not divisible. It seems more accurate, however, to say that whether a non-exclusive easement or profit may be divided depends ultimately upon the grantor's intent. If the creating instrument contains language that shows he anticipated or was willing that it might be divided, then it may be.... The fact that an easement for profit is non-exclusive is a powerful factor tending to show, or even raising a presumption, that divisibility was not intended, but it is not always conclusive.

R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* § 8.11, pp. 462–663 (Hornbook Series Lawyer's Edition (1984)).

In this case the trial court expressly found that the School District's use of the Irrigation District's easement on Abbotts' property was consistent with the Irrigation District's easement and that there was no enlargement of the easement. The School District used the easement in a manner allowed by the easement grant and the School District did no more than the Irrigation District could have done on Abbotts' property. In this case the placement of a cement inlet collar and trash screen are consistent with the use of the irrigation ditch. The trial court found that the place-

ment of the cement collar and trash screen on Abbotts' property was not an enlargement of the burden to Abbotts' property. Where the findings of the factfinder are supported by substantial, competent, though conflicting evidence, they will not be set aside on appeal. *Stout v. Westover,* 106 Idaho 533, 681 P.2d 1008 (1984).

This holding is not inconsistent with the license agreement which states that the license is only for the benefit of the School District. Although the placement of the cement collar and trash screen on Abbotts' property benefits the School District directly, and the Irrigation District benefits indirectly from the improvement to its structure as well as from the promise from the School District to maintain the underground system. The irrigation district obviously could not allow a utility company to use its easement for a power line or a cable television firm to utilize the ditch easement because the addition of power lines and poles would certainly not be within the scope of the easement. The addition of a cement collar and safety screen on Abbotts' property however, is consistent with the nature of the irrigation ditch use and, as the trial court held, is not an expansion or enlargement of the easement or the burden on the servient estate. Placement of irrigation ditches in underground pipes or addition of gates, collars and safety screens, is common and necessary in modern irrigation practices and the finding of the district court that the improvements made to the irrigation ditch on Abbotts' property is not an expansion or enlargement of the easement it supported in the record and will not be disturbed on appeal.

Thus, we hold a third party may obtain a license from an easement holder to use the easement without the notice to and consent from the servient estate owner so long as, and expressly provided that, the use of the easement is consistent with and does not unreasonably increase the burden to the servient estate.

## VI.

### Ultra Vires

Abbotts argue that the license agreement delegates the irrigation district's re-

**552**

sponsibility for management and control of the irrigation ditch as it runs over part of the Abbott's land and that this delegation of authority is in direct conflict with I.C. § 43–304. Idaho Code § 43–304 sets out the general powers of the board of directors of the Irrigation District and Abbotts cite *Yaden v. Gem Irrigation Dist.*, 37 Idaho 300, 216 P. 250 (1923), for the proposition that when the board of directors acts in excess of its authority then such actions are void to the extent that the actions depart from that authority. Abbotts argue that because the Irrigation District impermissibly delegated its powers to control and manage the Savage Lateral on the Abbotts' property to another, the entire license agreement is void.

We note that the board of directors of the Irrigation District may contract with others to construct and operate the necessary works and such action is not ultra vires. *Board of Directors of Wilder Irrigation Dist. v. Jorgensen,* 64 Idaho 538, 136 P.2d 461 (1943). In this case the district court found that the "purpose of the license agreement is to protect the Irrigation District's right to absolutely control any modification or alteration of the Irrigation District's lateral ditch." Thus, we see no impermissible delegation here. The trial court's findings will not be disturbed. Accordingly, we affirm the findings of the trial court on the factual and legal issues presented.

### VII.

#### *Attorney Fees*

The trial court found that Abbotts had brought and pursued this action frivolously and without basis. We disagree. Issues of first impression have been presented to the district court and to us in these proceedings. Abbotts' attempt to define their rights as the owners of a servient estate, in this instance, was certainly not frivolous nor without basis. The trial court's award of attorney fees is reversed.

Affirmed in part/reversed in part. No fees on appeal. Costs on appeal to respondent.

BAKES, C.J., and BISTLINE and JOHNSON, JJ., concur.

McDEVITT, J., concurs in result.