124 P.3d 1008

**Brad CHRISTENSEN and Kristi Christensen, husband and wife, Dennis Fairchild and Linda Fairchild, husband and wife, Plaintiffs–Counterdefendants–Appellants,**

**v.**

**CITY OF POCATELLO, a municipal corporation of the State of Idaho, Defendant–Counterclaimant–Respondent.**

No. 30902.

Supreme Court of Idaho.

Pocatello, September 2005 Term.

Nov. 23, 2005.

Ronald S. George, Pocatello, Idaho, for appellants. Ronald S. George argued.

Richard A. Diehl, Jr., Pocatello, Idaho, for respondent. Richard A. Diehl, Jr., argued.

JONES, Justice.

The Christensens and Fairchilds initiated this action to prevent the City of Pocatello from extending its Portneuf Greenway, a biking and walking path, over an unopened road and an easement, both of which traverse their property. The City counterclaimed, seeking an order allowing it to proceed with the Greenway extension. After deciding some of the issues on summary judgment and conducting a bench trial on other issues, the district court ruled in favor of the City, issuing an order allowing the City to proceed with its plans. We affirm in part and reverse in part.

## I.

Harper Road was platted and dedicated as a public city road in 1946 but has never been opened or used as such. It runs from Bannock Highway on the west, through property owned by the Christensens and another party, terminating at the west boundary of a parcel that was owned by the Fairchilds at the commencement of the action but subsequently acquired by the Christensens. The latter parcel will be referred to as the Fairchild property. The east terminus of Harper Road abuts the Fairchild property at about the mid-point of its west side. A "roadway and utility" easement encumbers the west 30 feet of the Fairchild property. The north end of the easement abuts a piece of land owned by the City and known as the "Sewer Lagoon" property, located to the north of the Fairchild property. The easement was created in 1974 when Western National Corporation deeded the Fairchild property to Calvin and Marie Mercer, reserving the easement in order to provide access to the Sewer Lagoon property from Cree Avenue, located to the south of the Fairchild property. When the easement was created, Western National owned the dominant Sewer Lagoon property. That property was deeded to the City later in 1974, but the City has not used the easement for many years.

The Christensens own lots on both sides of Harper Road. In 1997, they began to build an earthen berm on one of their lots. They had no permit, however, and when the City got wind of this activity, it informed the Christensens that they needed a permit. The Christensens obtained a permit and now the berm extends across Harper Road.[1] The Christensens also own two outbuildings which encroach on Harper Road and which were built well before the road was platted in

---

1. An issue of fact existed concerning the extent of the Christensens' permit. The Christensens contended the permit enabled them to build the berm across the width of Harper Road. The City admitted it issued a permit allowing the Christensens to build the berm, but neither admitted nor denied that the permit allowed the berm to cross the road. The permit simply allowed the "grading of dirt" with the stipulation that no additional fill dirt was to be brought on site. The district court resolved the question based on the Christensens' application and trial testimony, which is discussed more *infra*.

1946. In 1999, the Christensens sought a permit to construct a shop on their lot. The total square footage of the proposed new shop, combined with the other buildings on the lot, exceeded the total allowable square footage for buildings, so, as a condition of approving the new shop, the City required the Christensens to remove the outbuildings. As of the date of trial in 2004, the buildings remained and the new shop had not been built.

In a letter to the Christensens, the City announced its intent to expand the Greenway onto Harper Road and the easement, thus connecting Harper Road, the easement, and the Sewer Lagoon property with the rest of the Greenway, but the Christensens and Fairchilds objected. They filed a complaint in November 2000, seeking declaratory relief and an injunction preventing the City from using the road and easement as intended. Specifically, the Christensens alleged (1) the Greenway would encroach on the portion of Harper Road the Christensens "owned" (the Christensens asserted they acquired that ground via adverse possession); (2) Harper Road is an alley which the City vacated through its non-use for more than 50 years; (3) the City waived any entitlement to use Harper Road when it issued the Christensens a permit to construct the berm in 1997 (the Christensens' reliance thereon triggering the waiver); and (4) the City's proposed use is not consistent with that permitted on a public road. The Fairchilds alleged the easement is a private easement and that the public's use of it as part of the Greenway would unlawfully increase the burden on their servient property.

The City answered and filed a counterclaim. It sought declaratory relief entitling them to expand the Greenway as proposed, an order requiring the Christensens to remove the berm insofar as it crosses Harper Road, and an injunction requiring the Christensens to remove the outbuildings encroaching on the road. Both sides moved for summary judgment and those and other motions were heard in January of 2004. Shortly thereafter, the court issued a memorandum decision in which it ruled, relevant to this appeal, that Harper Road is a road, not an alley, and that the City has the authority to limit traffic on Harper Road to bicyclists and pedestrians.

To determine the remaining issues, the case proceeded to a bench trial and the district court issued a decision, ruling as follows: (1) the Christensens' contention that they obtained the part of Harper Road underlying their encroaching outbuildings via adverse possession failed; (2) the City was not estopped from opening Harper Road; and (3) the proposed use of the easement did not impermissibly increase the burden to the servient Fairchild property. Accordingly, the court's subsequent judgment ordered, relevant to this appeal, that (1) the City may expand the Greenway onto Harper Road; (2) the City may expand the Greenway across the easement; (3) the Christensens are enjoined from preventing or interfering with the surveying for and construction and use of the Greenway expansion; and (4) the Christensens were enjoined from placing any additional encroachments on Harper Road; and (5) the Christensens must remove the two outbuildings on Harper Road. This appeal followed.

## II.

We must decide on appeal (1) whether the City may extend the Greenway across the easement; and (2) whether the City has the authority to open Harper Road and limit traffic on it to pedestrians and bicyclists for use as part of the Greenway. The Christensens included other issues in their notice of appeal but failed to dedicate any argument to them in their briefs, so those issues have been waived. *See East v. West One Bank,* 120 Idaho 226, 230–31, 815 P.2d 35–39–40 (Ct.App.1991).

### A.

 If made part of the Greenway, the easement will allow foot and bicycle traffic between Harper Road, the Sewer Lagoon property, and the rest of the Greenway. Thus, the easement, originally intended to provide ingress and egress between Cree Avenue and the Sewer Lagoon property, will become part of a thoroughfare. This, say the Christensens, cannot be allowed, since ease-

ments appurtenant to land cannot serve parcels other than the dominant estate.[2] The district court acknowledged that the easement would serve other stretches of the Greenway not part of the dominant parcel, but wrote that the nature of this access was "too attenuated as a matter of law to constitute an improper use of an easement...."

While we have addressed in different contexts the rules applicable to a changed or increased use of an easement, *see Abbott v. Nampa Sch. Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991), we have not dealt with the question presented here— whether an easement may be used to benefit property other than the identified dominant parcel. The authoritative sources for the Christensens' theory are the Restatement (Third) of Property: Servitudes and a decision of the Arizona Court of Appeals. According to the Restatement, "[u]nless the terms of the servitude ... provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate." Restatement (Third) of Property: Servitudes § 4.11. "The rationale," as explained in comment b. to this provision, is "that use to serve other property is not within the intended purpose of the servitude." *Id.* at cmt. b. Another purpose of the rule is to "avoid[ ] otherwise difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate." *Id.* Thus, where one seeks to use an easement appurtenant to an identified dominant estate to serve a parcel other than that dominant estate, it is impermissible as a matter of law and the factual inquiry regarding increased use is not conducted.

In *DND Neffson Co. v. Galleria Partners,* 155 Ariz. 148, 745 P.2d 206 (Ariz.Ct.App. 1987), the panel affirmed an order enjoining a shopping mall owner from using an easement to access property that was not part of the dominant parcel served by the easement. The shopping mall developer's plan would have allowed mallgoers to use the easement to access the dominant parcel and, from there, access a parcel adjacent to the dominant parcel. *DND Neffson Co.,* 745 P.2d at 207. The easement was granted expressly for the dominant parcel and none other. *Id.* To the court, the decision was clearcut: "It is clear that an easement appurtenant to a parcel of land, the dominant parcel, may not be used to benefit another parcel of land to which the easement is not appurtenant even though the two parcels are adjacent and under common ownership." *Id.* (citing *Penn Bowling Recreation Ctr. v. Hot Shoppes, Inc.,* 179 F.2d 64 (D.C.Cir.1949); *McCullough v. Broad Exchange Co.,* 101 A.D. 566, 92 N.Y.S. 533 (N.Y.1905)). The · court thought it irrelevant that the actual burden on the easement would not be known until the mall was completed. The court wrote that "[a]n easement can be overburdened either by overuse or by *improper* use." *Id.* (Emphasis added.)

Many other jurisdictions follow the Restatement rule. *See, e.g., Smith v. Combs,* 554 S.W.2d 412, 414 (Ky.Ct.App.1977) ("Extending the use of a roadway easement to land not a part of the original tract constitutes an unreasonable burden"); *Mancini v. Bard,* 42 N.Y.2d 28, 396 N.Y.S.2d 621, 364 N.E.2d 1313, 1315 (1977) (easement could not be used to benefit parcels not part of original dominant estate); *Leffingwell Ranch, Inc. v. Cieri,* 276 Mont. 421, 916 P.2d 751, 758 (1996) (easements at issue were appurtenant only to lands that grantor owned at the time of creation and could not be enlarged to access after-acquired property); *Gojmerac v. Mahn,* 250 Wis.2d 1, 640 N.W.2d 178, 186 (2001) (citing with approval Restatement (Third) of Property: Servitudes § 4.11).

■ In this case, the deed does not identify the dominant parcel served by the easement. It merely states that the property is subject to "[a] 30 foot roadway and utility easement" and another utility easement not at issue in this case. Under different circumstances, the question of which parcel(s) the easement was intended to serve might be

---

**2.** The Christensens seem to have abandoned any argument that the change in use will create an impermissible burden on the servient estate based on the *volume* of use. While it was a

contested issue at the district court, none of the Christensens' brief is dedicated to that argument. Accordingly, we will not address the issue.

up for debate. But, the City admitted in its answer that the easement "serves a dominant estate in land which was simultaneously owned by Western Mortgage Corporation at the time the [easement] was created. . . ." An admission is, of course, binding on the admitting party. *Weed v. Idaho Copper Co.*, 51 Idaho 737, 10 P.2d 613 (1932). The dominant parcel is identified in an exhibit (a recorded deed), and according to testimony of the City's surveyor, included a narrow swath of land that extended southeasterly to Cheyenne Avenue.

Under the City's plan, the easement will be used to serve property other than the dominant estate—the easement will benefit properties along and west of Harper Road, which were not part of the original dominant estate. Pedestrians and bicyclists coming from properties located along Harper Road and to the west will be able to gain access to the easement at about the midpoint of its west boundary on the Fairchild property and traverse to the Sewer Lagoon property, as well as to properties located along the Greenway beyond the southeasterly boundary of the dominant parcel. There was no evidence demonstrating that the easement and dominant parcel were ever accessed via Harper Road. The City admitted in its answer that the easement provided the only access to the dominant parcel and conceded at oral argument that Harper Road was not used to access the easement.

Moreover, the proposed change in use of the easement, from a virtually unused ingress/egress easement serving a specific dominant parcel, to part of a thoroughfare open to the public for recreation purposes, is not consistent with the purpose of the easement. *See* Restatement (Third) of Property: Servitudes § 4.11 cmt. b. Indeed, it is fundamentally different. The proposed change does not involve recreators using the easement to travel from Cree Avenue to the dominant parcel to frolic in a park or run around a track and then return to Cree

Avenue on the same easement. Counsel for the Christensens conceded they could not complain if this were the City's plan. In sum, we cannot find any intent that the easement was intended to serve the purpose proposed by the City.

▮ In light of the foregoing, we believe the facts of this case are an appropriate set on which to adopt § 4.11 of the Restatement.[3] The principle expressed therein prevents the City from using the easement to benefit parcels other than the dominant parcel. Thus, the easement may not be used to serve Harper Road or property beyond the dominant parcel.

The City, however, contends there is no need to adopt the Restatement since, it believes, our caselaw addresses the issue. According to the City, it can change the use of the easement to reflect the changed use on the dominant estate. They rely on a portion of *Abbott*, which provides that

> an easement granted or reserved in general terms, without any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for those purposes to which *that estate* may be subsequently devoted. Thus, there may be an increase in the volume and kind of use for such an easement during the course of its enjoyment.

*Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho at 548, 808 P.2d at 1293 (quoting 25 Am.Jur.2d *Easements and Licenses* § 74 (1966)) (emphasis added). The City's reliance on this statement is misplaced. This statement speaks only to the changed use on "that estate," i.e., the dominant parcel; it does not endorse a change in use that involves the easement serving parcels *other than* the dominant parcel.

---

3. When urged to adopt a provision of the Restatement, we will decline to do so if it is inconsistent with Idaho law, the case can be resolved by another formulation, or if it can be resolved by current law. *See Estate of Skvorak v. Security Union*, 140 Idaho 16, 22, 89 P.3d 856, 862 (2004). As is evident from the above discussion, none of the reasons not to adopt it are present. No Idaho decision is contrary to it, this issue cannot be resolved by another formulation, and current law does not answer the direct question.

## B.

Next, we must consider whether the City has the authority to open Harper Road and limit traffic on it to bicycles and pedestrians. The Christensens contend (1) Harper Road is not a road, but an alley that has, by operation of law, become abandoned; (2) if the City is going to open Harper Road, it cannot limit traffic on it to bicycles and pedestrians; and (3) regardless, the City in this case should be estopped from opening the road. We are persuaded by none of these arguments.

### 1.

■■■ The Christensens base their abandonment claim on Idaho Code § 50–311, which provides that in cities with populations of 50,000 or more "in which a *dedicated alley* has not been used as an alley for a period of fifty (50) years [such alley] shall revert to the owner of the adjacent real estate, one half (1/2) on each side thereof, by operation of the law. . . ." (Emphasis added.) The plat labels Harper Road as a road, and this the Christensens do not dispute. Where an instrument's language is plain and unambiguous, the language in the document itself controls the meaning. *Robbins v. County of Blaine*, 134 Idaho 113, 116, 996 P.2d 813, 816 (2000). Harper road was dedicated as a road, not an alley, so the reversion provision does not apply. In light of the unambiguous characterization on the plat of Harper Road as a road and, without the evidence necessary to survive a motion for summary judgment, the district court's ruling on this issue is correct.

### 2.

■■■ The Christensens also contend that as a matter of law the City cannot use Harper Road as a bicycle and pedestrian path because, as abutting landowners to the street, they hold an easement in it and the road must forever be kept open for the purpose for which it was dedicated—in this case a roadway. In other words, the City cannot, they say, open Harper Road only for pedestrians and bicyclists; if the City opens the road at all, it must open it for every use— bikes, walkers, horses, roller skaters, runners, and motor vehicles. They are wrong.

The district court ruled that Idaho Code § 50–314 authorizes cities to "control and limit the traffic on streets," and that bicycles and pedestrians are types of traffic that are allowed on public streets. Pursuant to its authority to "limit" traffic, the court wrote, the City may close Harper Road to vehicular traffic.

Neither the Legislature nor any appellate court in this state has pondered the possible meanings or limitations of "control and limit the traffic," as used in I.C. § 50–314. However, we have traditionally viewed municipalities' authority over public streets as fairly broad. We have said that "[t]he supervision and control of traffic on city streets necessarily inheres within the police powers of a municipality[.]" *Snyder v. State*, 92 Idaho 175, 178, 438 P.2d 920, 923 (1968). And we have consistently characterized the nature of this power over streets as "exclusive and unlimited." *See Foster's, Inc. v. Boise City*, 63 Idaho 201, 211, 118 P.2d 721, 725 (1941); *Merritt v. State*, 113 Idaho 142, 145, 742 P.2d 397, 400 (1986). In *Foster's* we explained the extent of a city's police power as follows:

> The right to travel over a street or highway is a primary absolute right of everyone, but while it is such, the exercise of that right may be *regulated* in almost every respect. For instance; it is proper to prescribe what kind, size or weight of vehicle or means of transportation one may not use in traveling over a street. . . .

*Id.* at 217, 118 P.2d at 728. This quotation is dicta: whether the city could limit the nature of vehicles allowed on a particular road was not at issue in the case. And, none of the Idaho cases involving a city's authority over streets involved a situation like the one in this case. However, the statutes from which these pronouncements derived were similar to the one currently in effect. For instance, in *Carson v. City of Genesee*, 9 Idaho 244, 74 P. 862 (1903), where the plaintiff sued the city for damages stemming from a fall on a sidewalk, we examined the nature of the municipality's authority over the streets and pondered whether the grant of that authority carried with it certain duties. *Carson*, 9 Idaho at 253, 74 P. at 864. One of the statutes then in force provided that "[t]he

city council, or board of trustees, shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair and free from nuisance." *Id.* at 252, 74 P. at 864 (quoting 1899 Idaho Sess. Laws sec. 81, p. 208). This reads similarly to I.C. § 50–314. Based on this, and other aspects of the 1899 act granting municipalities authority over streets, the *Carson* Court summed up municipalities' authority as "exclusive and unlimited." *Id.* at 253, 74 P. at 864.

One can take from the above that I.C. § 50–314 and our traditional view of municipalities' authority over streets allow the City in this case to limit traffic on Harper Road to bicycles and pedestrians. This comports with the general idea that closing streets or regulating the kind of traffic on them is a discretionary matter vested in the City's governing board. *See Cohen v. City of Hartford,* 244 Conn. 206, 710 A.2d 746, 753–54 (1998) (city may exercise its police power over highways to close a public street to motor vehicles during certain hours of the day). As the district court noted, interpreting the statute as we have does not foreclose other remedies the Christensens may have. All we have been asked to do in this case is decide whether the City has the authority to limit the traffic on Harper Road. It does.

### 3.

Finally, the Christensens contend that they relied on their permit in expending money, time and energy to build the berm across Harper Road and, for that, the City should be estopped from requiring them to remove the berm. They are wrong once again. They do not really specify which version of estoppel they believe helps their case, but neither quasi-estoppel nor equitable estoppel applies. First, estoppel will not generally bar a municipality from exercising its police powers. *Yellow Cab Taxi Serv. v. City of Twin Falls,* 68 Idaho 145, 149, 190 P.2d 681, 683 (1948).

Second, while the Christensens attempt to overcome this general rule with pages upon pages of conclusory statements about circumstances where it *does* apply, they are woefully thin on facts. And, the facts that do exist actually support the district court's ruling. Quasi-estoppel prevents a party from successfully asserting a position inconsistent with a previously-taken position, with knowledge of the facts and of its rights, to the detriment of the person seeking to invoke it. *Sun Valley Hot Springs Ranch v. Kelsey,* 131 Idaho 657, 662, 962 P.2d 1041, 1046 (1998). Equitable estoppel keeps a party from benefiting where (1) the party against whom the doctrine is sought to be invoked falsely represented or concealed a material fact with actual or constructive knowledge of the truth; (2) the party asserting equitable estoppel did not know or could not know the truth; (3) the false representation or concealment was made with the intent that it be relied on; and (4) the complaining party did in fact rely to his or her or its detriment. *Reggjovich v. First Western Invest.,* 134 Idaho 154, 158, 997 P.2d 615, 619 (2000).

The permit at issue does not indicate that the Christensens were allowed to place the berm across Harper Road. This contradicts the assertion in their brief that the permit did allow them to obstruct the road. In fact, the portion of the transcript to which the Christensens cite for the idea that the City knew it was issuing a permit allowing the Christensens to place the berm on Harper Road does not in any way demonstrate that fact. The portion cited speaks only to the amount Mr. Christensen estimated it would cost to duplicate the berm. Additionally, Mr. Christensen's own testimony actually eliminates any possibility that the requisite element of a change in position exists. He admitted he did not discuss with the City's building permit official even the existence of Harper Road and that he did not depict Harper Road on his application for a permit. In short, nothing in the record demonstrates the City gave Mr. Christensen its blessing to build a berm on Harper Road and nothing demonstrates the City falsely represented some material fact. Therefore, the district court's finding, that the City did not take an inconsistent position, is not clearly erroneous and thus it is not subject to reversal. *See*

*Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003).

## III.

The City proposes an impermissible expansion of the use and purpose for which the easement was created. Accordingly, the district court's ruling with respect to the easement is reversed. The district court's judgment is otherwise affirmed. No fees, no costs.

Chief Justice SCHROEDER, Justices TROUT, EISMANN and BURDICK concur.

