# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38426

| | | |
|---|---|---|
| TERESA A. BLANKENSHIP, | ) | |
| | ) | |
| Petitioner, | ) | Coeur d'Alene, May 2012 Term |
| | ) | |
| v. | ) | 2012 Opinion No. 106 |
| | ) | |
| WASHINGTON TRUST BANK, | ) | Filed: July 2, 2012 |
| | ) | |
| Respondent-Respondent on Appeal. | ) | Stephen Kenyon, Clerk |
| _____ | ) | |
| | ) | |
| WILLIAM MICHAEL BOWMAN, and | ) | |
| ERIC BOWMAN, | ) | |
| | ) | |
| Intervenors-Appellants. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge.

The district court's order of dismissal is affirmed.

James Theodore Diehl, Sandpoint, for appellants.

Lukins & Annis, P.S., Coeur d'Alene, for respondent. Mishelle Fulgham argued.

_____

HORTON, Justice.

Washington Trust Bank (WTB) was the trustee of the trust created by Althea Bowman's last will and testament. Althea's four surviving children are the trust beneficiaries. Three of these beneficiaries argued to the district court that the Trustee exceeded its authority by securing, with a deed of trust encumbering a commercial property held by the trust, funds advanced to the fourth beneficiary. In this transaction, separate divisions of WTB acted as trustee (Trustee) and as the beneficiary of the deed of trust (Lender).[1] The district court granted summary judgment in favor of the Trustee. Two of the beneficiaries appeal. We affirm the district court's order of dismissal.

_____

[1] Herein, WTB is referred to as "Trustee" where it acted as trustee of the Althea Bowman trust, and as "Lender" where it acted as the lender under the promissory note.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Teresa Blankenship (Teresa), Ryan Bowman (Ryan), Eric Bowman (Eric), and William Bowman (William) are the beneficiaries of a trust established by the last will and testament of their mother, Althea Lorraine Bowman. The trust instrument provides that "The trust estate shall be divided into equal shares, one share for each of my surviving children and one share for each deceased child of mine with surviving descendants." It also provides that:

> Each share for a surviving child of mine shall be managed and distributed in trust for the child as follows:
>     1.   During the term of this Trust, the Trustee shall pay to the child all of the current net income of the child's trust.
>     2.   Whenever the Trustee determines that the income of any child of mine from all sources known to the Trustee is not sufficient for his or her support, health, maintenance, and education, the Trustee shall pay to the child or use for his or her benefit so much of the principal of the child's trust as the Trustee determines to be reasonable for those purposes.
>     3.   When any child of mine reaches the age of sixty (60) years, the Trustee shall distribute to the child the balance of his or her trust.

The trust instrument expressly recognizes that the Trustee possesses the duties, powers, and rights imposed and granted by law, as well as additional powers, including the power to make distributions to any beneficiary, and the power to loan trust funds to any beneficiary if the beneficiary encountered a financial emergency that he or she could not meet from his or her own resources.

The Trustee made several advances to Ryan totaling $147,559.24. In January 2007, the Trustee notified all of the beneficiaries that it intended to sell one or two of the trust's commercial properties in order to obtain funds for their support. In April 2007, Teresa petitioned to remove the Trustee, asserting that it had committed waste by "lending other beneficiaries outside of what is permitted" and managing trust properties such that profits were not maximized. Teresa also moved for an injunction prohibiting WTB from selling trust property.

On August 6, 2007, Trustee vice president Susan Kuzma (Kuzma) executed a promissory note providing that "Althea Bowman T/U/W[2] FBO Ryan Bowman ('Borrower') promises to pay to WASHINGTON TRUST BANK ('Lender') . . . $147,559.24." On that date, Kuzma also acted on behalf of the Ryan Bowman trust and secured the promissory note by executing, for Lender's

---

[2] Kuzma testified that "T/U/W" stands for "trust under the will."

benefit, a deed of trust. The deed of trust was for a parcel of real property owned by the trust and located in Bonner County.

On August 27, 2008, Teresa filed an amended petition that added a complaint for damages, alleging that the Trustee had negligently operated the trust and breached its duty of loyalty to Teresa. On September 10, 2008, the court granted the Trustee's motion for leave to resign as trustee, and on October 23, 2008, the court entered an order appointing a third party as trustee.[3] On November 12, 2008, the court granted William's motion to intervene. On January 29, 2009, the Trustee moved for summary judgment, asserting that its resignation mooted both Teresa's request for its removal and her request for an injunction preventing the Trustee from selling the trust's real property. It also argued that Teresa lacked standing to object to the advances to Ryan Bowman's trust and the encumbrance upon it, that the Trustee had lawfully exercised its powers in managing the trust, and that the Trustee was not negligent in operating the trust. Finally, the Trustee argued that William should be dismissed from the action for failure to file a particularized pleading.

Before the March 2, 2009, hearing on the summary judgment motion, William filed a complaint alleging the Trustee had breached its fiduciary duties by "executing a self-serving promissory note on behalf of RYAN BOWMAN . . . and secur[ing] said promissory note by executing a self-serving deed of trust against" trust property, and also by "plac[ing] a lien on trust assets for the benefit of a single beneficiary without the express written consent and approval of all other beneficiaries." William's complaint sought a preliminary injunction preventing sale of the real property, an order quieting title to the real property encumbered by the deed of trust, damages for the Trustee's alleged breach of fiduciary duties and negligent operation of the trust, and attorney fees and costs.

The court ruled from the bench at the summary judgment hearing and requested that counsel to the Trustee draft the order. That order was entered on March 9, 2009, and provides in relevant part as follows:

> IT IS HEREBY ORDERED that:
> 1.     WTB's first request for summary judgment is hereby granted and Petitioner's and Intervenors' request for an order for removal of WTB as Trustee is dismissed;

---

[3] Although these events brought WTB's tenure as trustee to an end, it is referred to as Trustee throughout this opinion because of its role throughout the events that gave rise to this lawsuit.

3

2. WTB's second request for summary judgment is hereby granted and Petitioner's and Intervenors' request for a preliminary injunction prohibiting WTB, acting as Trustee, from selling real property held by the children's trusts is dismissed;

3. WTB's third request for summary judgment is denied as genuine issues of material fact exist as to whether Petitioner and Intervenor[s] lack standing to claim negligence damages for the advance of funds to Ryan Bowman's Trust and recording of a Deed of Trust against the undivided ¼ interest in the real property held by Ryan Bowman's Trust is not dismissed.

4. WTB's fourth request for summary judgment is hereby granted and Petitioner's and Intervenors' claims of damages purportedly caused by the advance of funds to Ryan Bowman's Trust and the recording of a Deed of Trust against the undivided ¼ interest in the real property held by Ryan Bowman's Turst [sic] is dismissed because such action is authorized by the Last Will and Testament and Idaho law.

5. WTB's fifth request for summary judgment is hereby denied and Petitioner's and Intervenors' claim of damages based upon WTB's purported negligent operation of the Trusts is not dismissed.

6. WTB's sixth request for summary judgment is hereby denied and Intervenor WILLIAM MICHAEL BOWMAN is not dismissed.

On March 12, 2009, William and Eric (collectively "the Bowmans") filed a first amended complaint that added Eric as an intervenor and removed the prayer for damages for the Trustee's breach of fiduciary duties and negligent operation of the trust.[4] Although trial was set for March 16, 2009, trial did not occur. Instead Teresa dismissed her claims based on a settlement agreement that she had reached with the Trustee that morning. The Bowmans informed the court they did not intend to participate in trial, but instead sought simply to preserve their right to appeal the court's earlier grant of summary judgment. The court entered an order dismissing Teresa's claims on May 5, 2009.

In the meantime, the Trustee moved to dismiss the Bowmans' first amended complaint. When the district court addressed that motion, it reasoned that:

> WTB is entitled to have its Motion to Dismiss First Amended Complaint of Intervenors granted . . . because [the Bowmans] have not proven a set of facts which would entitle them to the relief sought. [The Bowman's] "relief sought" in their First Amended Complaint of Intervenors is very limited, filed only to keep their claim of standing alive, and to seek appeal of this Court's ruling on summary judgment.

---

[4] The district court held that although Eric did not become a party to the suit until after entry of the order regarding summary judgment, Eric's complaint related back to Teresa's complaint such that he had standing to appeal the court's grant of summary judgment.

The district court thus granted the Trustee's motion to dismiss. On the same day, the court entered final judgment dismissing all claims against the Trustee. The Bowmans timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court applies the same standard used by the district court originally ruling on the motion." *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008) (citing *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 326, 48 P.3d 651, 655 (2002)). "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

## III. ANALYSIS

The Bowmans appeal the following portion of the summary judgment order entered in the Trustee's favor:

> WTB's fourth request for summary judgment is hereby granted and Petitioner's and Intervenors' claims of damages purportedly caused by the advance of funds to Ryan Bowman's Trust and the recording of a Deed of Trust against the undivided ¼ interest in the real property held by Ryan Bowman's Turst [sic] is dismissed because such action is authorized by the Last Will and Testament and Idaho law.

The Trustee asserts that the Bowmans lack standing to assert their claims because the trust established four distinct and independently managed shares, and thus the Trustee's conduct with regard to Ryan's one-quarter trust interest did not affect the Bowmans' distinct interests. Although the Trustee did not cross-appeal the district court's denial of its motion for summary judgment on this issue, it cites *Beach Lateral Water Users Assoc. v. Harrison*, 142 Idaho 600, 603, 130 P.3d 1138, 1141 (2006), for the proposition that standing is a jurisdictional issue that may be raised at any time. (Citing *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000); *Hoppe v. McDonald*, 103 Idaho 33, 35, 644 P.2d 355, 357 (1982)). The Trustee argues that the Bowmans lack standing because they have not suffered and will not suffer any damages. Alternatively, the Trustee contends that even if there is a possibility that the Bowmans will suffer damage, their claim at present is merely speculative. The Trustee thus challenges both the Bowmans' standing to assert their claims and the ripeness of those claims.

### A. The Bowmans lack standing to challenge the Trustee's conduct.

5

This Court must address jurisdictional issues, even if they were neither raised before, nor addressed by, the trial court. *Beach Lateral Water Users Assoc.*, 142 Idaho at 603, 130 P.3d at 1141. Jurisdictional issues include matters of justiciability including standing, ripeness, and mootness. *State v. Rhoades*, 120 Idaho 795, 802, 820 P.2d 665, 672 (1991); *Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 31-32, 253 P.3d 700, 705-06 (2011). "The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has 'alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions.'" *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) (quoting *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72 (1978)).

In the present case, Althea Bowman's last will and testament included language creating a trust for the benefit of her descendants. The trust estate consists of Althea's residuary estate, which is to "be divided into equal shares, one share for each of my surviving children and one share for each deceased child of mine with surviving descendants." The trust provides:

> Each share for a surviving child of mine shall be managed and distributed in trust for the child as follows:
> 1. During the term of this Trust, the Trustee shall pay to the child all of the current net income of the child's trust.
> 2. Whenever the Trustee determines that the income of any child of mine from all sources known to the Trustee is not sufficient for his or her support, health, maintenance, and education, the Trustee shall pay to the child or use for his or her benefit so much of the principal of the child's trust as the Trustee determines to be reasonable for those purposes.
> 3. When any child of mine reaches the age of sixty (60) years, the Trustee shall distribute to the child the balance of his or her trust.

We hold that the plain language of the trust document provides that each of Althea's four surviving children are beneficiaries of separate trusts, with each trust's property consisting of one-quarter of Althea's residuary estate. In other words, the Trustee manages four distinct trusts for the benefit of four distinct beneficiaries.

Given this plain language, we agree with the Trustee's assertion that the conduct complained of by the Bowmans affected only the Ryan Bowman trust, while it left the trusts of the other beneficiaries unaffected. As such, the other beneficiaries have not "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult

6

constitutional questions." *Miles*, 116 Idaho at 641, 778 P.2d at 763 (citing *Duke Power Co.* 438 U.S. at 72). We hold that the Bowmans lacked standing to bring this action, and we therefore affirm the district court's order dismissing this action.

### B. The Bowmans' claims are not ripe.

The Bowmans contend that if Ryan defaults on the promissory note, the Trustee may foreclose the deed of trust on Ryan's one-quarter undivided interest in the trust's commercial property, subsequent to which an I.C. § 6-501 action to partition that property may be initiated. They suggest that partition of the trust property will necessarily involve a sale of the whole, thus affecting their distinct undivided one-quarter interests therein.

We do not need to determine whether the Bowmans would have standing to challenge an action to partition the trust property, as no such action is presently pending, and therefore the Bowmans' claim is not ripe. "The traditional ripeness doctrine requires a petitioner or plaintiff to prove 1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002) (citing *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 376, 913 P.2d 1141, 1146 (1996)). Here, there is no present need for adjudication because there is no pending action to partition and sell the trust property. Ryan may not default on his promissory note – indeed, the Bowmans point to no evidence in the record that suggests Ryan is likely to default. Further, if Ryan does default, leading to foreclosure of the mortgage, the holder of the foreclosed interest may prefer to receive the property's rental proceeds rather than seek a sale of the property. We therefore conclude that the Bowmans' claims are not ripe.

## IV. CONCLUSION

We affirm the district court's order dismissing all claims against the Trustee because the Bowmans lack standing and they assert claims that are not ripe. Costs to WTB.

Chief Justice BURDICK and Justices EISMANN and W. JONES **CONCUR**.

J. JONES, Justice, specially concurring.

I concur in the Court's opinion because, although Washington Trust did some troubling things during its tenure as trustee, William and Eric Bowman do not have standing to seek redress for those actions. The trust beneficiary who might be in a position to complain of the questionable actions, Ryan Bowman, is not a party to this proceeding. The matters of concern

7

relate to advances Washington Trust made to Ryan in the amount of $147,559.24 prior to 2007.[5]

The advances to Ryan significantly exceeded the income from his trust. In January of 2007, Washington Trust notified all the beneficiaries that it intended to sell certain real property to obtain funds for their support. That precipitated these proceedings by Teresa Blankenship to stop any property sales and to remove Washington Trust as trustee. In their brief, Eric and William alleged:

> A reasonable inference from the evidence presented is that Washington Trust Bank significantly exceeded reasonable and prudent actions by continuing to advance monies to Ryan Bowman way beyond his portion of the income being generated by the assets and after being requested by the other beneficiaries to stop advancing monies in excess of normal distribution. It is also reasonable to infer that Washington Trust Bank made the decision to sell the commercial property in order to repay the amounts that they improperly advanced. At the time the decision to sell property was made, they were no longer acting solely in the best interest of the beneficiaries as required by I.C. § 68-505 and § 68-506, but were acting in the best interest of Washington Trust Bank in order to repay the monies owed by Ryan. This lawsuit was then initiated to enjoin Washington Trust Bank from selling property. Four (4) months after the litigation was commenced Washington Trust Bank breaches its fiduciary obligations to the beneficiaries and not only executed a formal promissory note but encumbers the commercial properties of the Althea Lorraine Bowman Testamentary Trust with a deed of trust issued in favor of Washington Trust Bank's Private Banking Division.

The record does lend support to the concerns raised by Eric and William.

The first matter of concern relates to the large amount that was advanced to Ryan. When counsel for Washington Trust was asked at oral argument of this case why Ryan was given advances substantially exceeding the income of his trust, the response was that Ryan was very demanding.[6] However, one of the reasons for choosing an institutional trustee, such as a bank, is to have a disinterested party that can resist the efforts of demanding beneficiaries to get their hands on money in circumstances not in keeping with the spirit of the trust instrument.

The record does not disclose what Ryan was told at the time the advances were being made—whether the distributions constituted an invasion of principal or whether they were a loan

---

[5] The trust document does provide for the trustee to pay to each beneficiary the current net income from the beneficiary's share of the trust, as well as the power to invade the principal of the beneficiary's trust share, as deemed reasonable by the trustee to pay expenses of support, health, maintenance and education. In addition, the trustee was authorized to loan trust funds to the beneficiary from his share of the trust to assist in meeting any financial emergency.

[6] Washington Trust's counsel did a good job of arguing its case before the Court and responding to questions. Counsel does not bear any responsibility for questionable actions that may have been taken by the bank, as trustee.

that he would have to pay back. It would certainly have been appropriate to advise him that the advances he demanded would end upon a promissory note bearing 8.25% interest that would affect his future distributions. What does appear from the record is that the $147,559.24 was advanced prior to 2007, but that the promissory note was not executed by Washington Trust until August 6, 2007. This lends itself to the appearance that Washington Trust may have advanced more funds to Ryan than was prudent based on the financial condition of his trust and that, after Teresa filed her petition in April of 2007, Washington Trust decided to characterize the advances as a loan.

A further item of concern has to do with the loan transaction. Washington Trust obtained the loan from its own private banking division, giving rise to the appearance of a conflict of interest. When asked at oral argument why the loan was obtained essentially in-house, counsel responded that this was done because Washington Trust offered the best deal (the 8.25% interest rate). That may be, but there is no indication in the record that Washington Trust complied with I.C. § 68-108(b) which requires court authorization where the duty of the trustee and its individual interest conflict in the exercise of a trust power. This provision states that "personal profit or advantage to an affiliated or subsidiary company or association is personal profit to any corporate trustee." *Id.*

Also of concern, but not particularly from Ryan's standpoint, is the wording of the deed of trust. Although the document indicates that the loan is being contracted by the trustee of the trust for Ryan, as to a one-fourth interest in the trust established by his mother, the trust deed makes no such distinction with regard to the real property being encumbered. That is, it does not appear that the trust deed limits its encumbering effect to just Ryan's proportionate interest in the real property. However, this issue was not raised by Eric and William in their appeal and is not before the Court for decision.

While these matters are not presented for determination on appeal, they certainly deserve passing mention.

9