130 P.3d 1138

**BEACH LATERAL WATER USERS AS-
SOCIATION, Plaintiff–Respondent–
Cross Appellant,**

v.

**Blaine C. HARRISON, Defendant–
Appellant–Cross Respondent.**

No. 31339.

Supreme Court of Idaho,
Boise, January 2006 Term.

Feb. 28, 2006.

Matt J. Howard, Boise, argued for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Angela S. Kaufman argued.

BURDICK, Justice.

Blaine C. Harrison (Harrison) appeals to this Court from a district court decision confirming the existence of a ditch easement implied by prior use held by members of the Beach Lateral Association (the Association) across a portion of Harrison's land. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harrison's property, as well as that of the members of the Association, was formerly held by a single owner, Clarence Patterson (Patterson). Patterson owned and farmed an 80–acre property from 1953 until 1972. During that period, a ditch, now referred to as the "Beach Lateral ditch," ran along the southern border of the property. Approximately one half mile to the east of the eighty-acre property, the Beach Lateral ditch connected to the Settlers Canal, where a head-gate allowed water to flow into the ditch. Water would run from east to west along the Beach Lateral ditch until it reached the southwestern corner of the property where excess water was directed northward (and apparently off the property) by a ditch on the western border of the property (the west ditch). The property irrigated generally south to north, and so if water from the Beach Lateral ditch was used for irrigation it exited the ditch and flowed northward onto Patterson's fields. In 1972 Patterson sold most of his property, and it was divided into sixteen five-acre parcels, one of which Patterson still owns. The Association was formed in 1995; its membership consisting of owners of those parcels, including Harrison.

In 1985, Harrison purchased one of the parcels. The Harrison parcel sits at the southwest corner of the original 80–acre Patterson property. As a result, Harrison's parcel contains the end portion of the Beach Lateral ditch and also part of the land that once held the west ditch. The portion of the Beach Lateral ditch that crosses the land now owned by Harrison is referred to in this action as the "Harrison ditch." At some point after 1972, the Department of Transportation created a borrow pit along a road running parallel to the west ditch. The west ditch eventually ceased to exist when it was plowed under by Harrison's predecessor in interest, and the spill water that would formerly have gone into the west ditch instead went into the borrow pit for its journey north.

In 2003 Harrison blocked the Harrison ditch, preventing the nearby property owners who formed the Association from using it. The blockage also resulted in flooding on property owned by members of the Association. The Association brought suit in its own name in district court. Following a bench trial the district court confirmed the existence of the ditch easement along the Harrison ditch and enjoined Harrison from blocking or impeding the flow of water through the ditch. Harrison filed a timely appeal from that judgment which is now before this Court.

## II. STANDARD OF REVIEW

 This Court exercises free review over matters of law. *Fisk v. Royal Caribbean Cruises, Ltd.,* 141 Idaho 290, 292, 108 P.3d 990, 992 (2005). We will not disturb findings of fact that are supported by substantial and competent evidence, even if the evidence is conflicting. *Weaver v. Stafford,* 134 Idaho 691, 696, 8 P.3d 1234, 1239 (2000). "However, this Court freely reviews the question of whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements of the existence of an implied easement or a prescriptive easement." *Davis v. Peacock,* 133 Idaho 637, 640, 991 P.2d 362, 365 (1999).

## III. ANALYSIS

In opposition to the ditch easement the district court confirmed to the Association, Harrison offers three primary arguments. The first argument is that the Association lacks the standing to bring this suit. The second is that the district court erred in confirming to the Association an easement implied from prior use because the Associa-

tion's use of the Harrison ditch differs from how it was used by the original common owner at the time the dominant and servient estates were severed. The third argument is that the district court erred in its determination that the Association's easement over the Harrison ditch extends as far as the borrow pit. In addition to these three arguments, Harrison also contends the district court erred in failing to include in its judgment an adequate legal description of the easement at issue. We will consider each of the arguments in turn.

## A. The Association's Standing

Harrison observes that it is the members of the Association, not the Association itself, who own the properties served by the easement in question. Since the Association itself does not own any of the dominant estates that allegedly hold an easement over the servient estate, Harrison argues, the Association cannot be the owner of an easement and the district court's determination was in error. In substance, this argument questions the Association's standing to bring the present suit without any other named plaintiffs.

■ Before addressing the issue of standing, it is first necessary to discuss three arguments asserted by the Association to preclude this Court from considering the matter. The first of these contentions is that Harrison cannot raise the issue on appeal because it was not discussed below. Harrison, however, has pointed out where in the record the issue was raised with the district court. Moreover, because the issue of standing is jurisdictional, *Van Valkenburgh v. Citizens for Term Limits,* 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000), it may be raised at any time, *Hoppe v. McDonald,* 103 Idaho 33, 35, 644 P.2d 355, 357 (1982).

Second, the Association contends that Harrison himself lacks standing to raise the issue because only its members have standing to object to any usurpation of their easement rights by the Association. The argument, however, is without merit because it is the Association that brought ownership and its possible standing into question by filing the instant lawsuit. Third, the Association argues that the question of who owns the ease-

ment in question is irrelevant because even if the Association does not own the easement its individual members do. The Association is correct that its individual members may hold the ownership interest in the dominant estates that the Association itself lacks, but that assertion alone is insufficient to establish whether the Association has standing.

Moving to the substance of Harrison's standing argument, we observe that the Association sought and received two forms of relief from the district court: (1) an order quieting title in the ditch easement in favor of the Association, and (2) injunctive relief preventing Harrison from impeding or blocking the flow of water in the Harrison ditch. The Association's standing with respect to each form of relief requires a slightly different analysis.

■ The rule in Idaho, mirroring that laid down by the United States Supreme Court, is that an association may have standing to seek judicial relief not only to protect its own interests, but also those of its members. *Bear Lake Educ. Assoc. v. Sch. Dist. 33,* 116 Idaho 443, 448, 776 P.2d 452, 457 (1989).

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the case, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343, 361–62 (1975)) (internal citations omitted).

■ A three part test for determining associational standing was articulated by the United States Supreme Court in *Hunt v. Washington Apple Advertising Comm'n,* 432

U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383, 394 (1977). There the Court wrote:

[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Id.*

The question of associational standing often turns on the nature of the relief sought. When an association seeks some form of prospective relief, such as a declaration or an injunction, its benefits will likely be shared by the association's members without any need for individualized findings of injury that would require the direct participation of its members as named parties. *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441, 53 L.Ed.2d at 394. "Indeed," wrote the United States Supreme Court in *Hunt,* "in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." *Id.* (quoting *Warth,* 422 U.S. at 515, 95 S.Ct. at 2213, 45 L.Ed.2d at 364).

Applying the *Hunt* test to this case, the first two elements are satisfied. Regarding the first element, the individual members of the Association are owners of dominant estates which they claim are served by a ditch easement across Harrison's servient estate, and consequently the Association's members acting individually would possess standing. With respect to the second element, the ditch easement interest the Association seeks to protect is germane to its operations as a Lateral Ditch Water User's Association. *See* I.C. § 42–1301 *et seq.*

The third element, that "neither the claim asserted, nor the relief requested, require the participation of individual members in the lawsuit," presents a greater difficulty. Although the Association avoided making any claim for damages, it did not restrict itself to a request for injunctive relief. Instead, the Association coupled its request for an injunction with a request that the district court

declare the Harrison ditch to be "within the implied easement by prior use *owned by the Association.*" (emphasis added). In its conclusions of law, the district court held that "Beach Lateral has an implied easement by prior use for the Harrison ditch" and granted injunctive relief to protect that easement. In other words, the Association requested and received not only injunctive relief but also an order quieting title in the easement to the Association itself.

■ In this case the Association was not in a position to ask the district court to quiet title to the ditch easement in its favor. An easement implied from prior use is an easement appurtenant to the dominant estate. *Davis,* 133 Idaho at 643, 991 P.2d at 368. The Association, both parties agree, does not own any of the dominant estates that would be served by the ditch easement in dispute. Title to the dominant estates rested with the Association's members, and therefore title to any appurtenant easements could only be quieted in favor of those actual owners. Because under these facts the Association's request to quiet title required the participation of the its individual members, the Association's request is unable to satisfy the third factor of the *Hunt* test and the Association lacked standing to bring that claim. The portion of the district court's ruling that quieted title in the ditch easement to the Association itself is consequently reversed.

■ This leaves in question the status of the injunctive relief sought and received by the Association. Injunctive relief, such as that granted here to the Association, is commonly shared by the members of an association and therefore does not require the participation of individual members as named parties. *See Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441, 53 L.Ed.2d at 394. Idaho law grants to lateral associations such as the Respondent the authority to direct the "improvement, repair and maintenance" of the lateral and distributing ditches that serve its members, I.C. § 42–1303, and to "do any and all things" not in conflict with other law "wherein the bests interests of the association will be furthered." I.C. § 42–1301. As a result, even if a lateral association itself lacks an

ownership interest in its members' ditch easements, it has standing to seek injunctive relief enabling it to carry out its statutory responsibilities. *See id.* Accordingly, we affirm the Association's standing to seek the injunctive relief granted by the district court.

### B. Easement Implied From Prior Use Over The Harrison Ditch

We next turn to Harrison's second argument: that the use of the Harrison ditch sought by the Association cannot be established by an easement implied from prior use because the use of the ditch at the time of the severance of the dominant and servient estates differs from the use now desired by the Association.

One seeking to establish an implied easement by prior use must satisfy three essential elements: "(1) unity of title or ownership and subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before separation of the dominant estate to show the use was intended to be permanent; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate." *Davis,* 133 Idaho at 642, 991 P.2d at 367. "[R]easonable necessity is something less than the great present necessity required for an easement implied by necessity." *Id.* at 643, 991 P.2d at 368. When ascertaining whether "reasonable necessity" existed, a court looks not to the present time, but instead determines whether reasonable necessity existed at the time the dominant and servient estates were severed. *Id.* at 642, 991 P.2d at 367. Once an implied easement by prior use is found to have existed at the time of severance, it "is not later extinguished if the easement is no longer reasonably necessary." *Id.* at 643, 991 P.2d at 368.

Applying those elements to the present case, we see that all the property in contention was once held by Patterson, and the dominant and servient estates were separated by the 1972 sale and division of the property. This meets the first element of "unity of title or ownership" as well as the "subsequent separation by grant of the dominant estate." It is the second and third elements, "apparent continuous use" and reasonable necessity that Harrison contests.

Harrison's argument is that the nature of any implied easement over the Harrison ditch held by the Association or its members was defined in 1972 by the uses to which Patterson had been putting the ditch. Patterson, Harrison contends, used the Harrison ditch to carry "live water." Because the water the members of the Association seek to send through the Harrison ditch would also include what Harrison categorizes as "wastewater," he concludes the Association's proposed use of the ditch impermissibly exceeds the implied easement established by the nature of Patterson's prior use.

Harrison draws our attention to Patterson's testimony offered at trial regarding the use of the Harrison ditch during the period from 1953 until the property was divided. During this time, Patterson's practice was to use the Beach Lateral ditch and the Harrison ditch to irrigate the southern portion of his eighty-acre property. Even when Patterson was not irrigating, he would maintain a steady flow of water through the ditch— thereby saving himself the trouble of traveling to the headgate at Settlers Canal and also allowing him to maintain a "head" of water in the ditches so that he could resume irrigating without delay.

Harrison contends that the water Patterson would send through the Harrison ditch did not contain "wastewater," by which Harrison means excess water flowing *from* irrigated lands. Harrison's confidence that the ditch would formerly have carried no wastewater from the property is because the land in 1972 irrigated from south to north and the Harrison ditch ran along the southern edge of the property—gravity as a result would carry wastewater from the property north and away from the ditch. Crucially to Harrison's argument, portions of the land once owned by Patterson and now held by members of the Association have been regraded and now send water south into the Beach Lateral ditch and ultimately the Harrison ditch. Because Harrison defines this water as wastewater flowing off of irrigated lands, he contends that it is outside the ditch easement established by the nature of Patterson's for-

mer use. As a consequence, Harrison asserts the Association's use of the Harrison ditch to carry wastewater does not meet the second and third elements of an easement implied from prior use—it was not part of Patterson's "apparent continuous use" at the time of severance and the use of the ditch to carry wastewater was not reasonably necessary in 1972.

The primary difficulty with Harrison's argument is that it depends on classifications of water that may be important in a water rights case but have no obvious application to an easement dispute such as the one at issue here. Although a ditch easement typically concerns the conveyance of water, it is "a property right apart from and independent of" questions of water rights. *Savage Lateral Ditch Water Users Assoc. v. Pulley*, 125 Idaho 237, 242, 869 P.2d 554, 559 (1993). The applicable rule in this instance holds that the owner of a dominant estate may not unilaterally expand an easement to unreasonably increase the burden on the servient estate. *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 549–50, 808 P.2d 1289, 1294–95 (1991). Here, the district court, based on substantial and competent evidence, determined that an easement to carry water exists over the Harrison ditch. Harrison asserts that the Association is attempting to pass a different *classification* of water through the ditch than was present in 1972, but he fails to explain how the allegedly changed classifications of water carried in the ditch constitute an expanded burden on his servient estate. No physical enlargement of the easement has been contemplated, nor has Harrison alleged that the volume of water passing through the Harrison ditch is greater than in 1972. We accordingly uphold the district court's grant of injunctive relief to the Association, prohibiting Harrison from blocking or impeding its members' use of the Harrison ditch.

## C. The Connection To The Borrow Pit

Harrison contends the district court erred in its apparent determination that the Association's easement over the Harrison ditch extends to where the ditch connects with the borrow pit. In 1972, the Harrison ditch ended at the western border of the property and water passing through the ditch was diverted northward through the west ditch which ran along the property's western boundary. The west ditch was inside the fence line of what is now the Harrison property. Some time after 1972, the Department of Transportation dug a borrow pit along a road running parallel to the west ditch. The west ditch eventually ceased to exist, and the spill water that would formerly have gone into the west ditch instead entered the borrow pit. The borrow pit is outside of Harrison's fence line and is a few feet further west than the location of the former west ditch.

In 2003, Harrison filled the extreme west end of the Harrison ditch with dirt, blocking the flow of water into the borrow pit. After the Association brought suit, the district court ordered Harrison to remove the blockage. On appeal to this Court, Harrison claims that because in 1972 the Harrison ditch ended a few feet short of where the borrow pit is now located, the Association has no right to access those last few feet of the ditch.

The owner of the servient estate may move an irrigation lateral subject to an easement, provided doing so "does not impede the flow of water or injure any other person using the lateral ditch." *Abbott*, 119 Idaho at 549, 808 P.2d at 1294 (interpreting I.C. § 42–1207). Uncontroverted testimony in the record establishes that the west ditch existed until Harrison's predecessor in interest, from whom Harrison bought the property at issue in 1985, plowed it under. The district court found that once the west ditch ceased to exist, water spilling from the Harrison ditch was diverted into the borrow pit.

As a consequence of those events, the rights of those entitled to use the Harrison ditch do not depend on how far the ditch extended in 1972. This is because the decision to obliterate the west ditch was made by Harrison's predecessor in interest, not by the owners of the dominant estates. In effect, Harrison's predecessor moved the ditch carrying spillwater from the west ditch to the borrow pit. It was arguably permissible for Harrison's predecessor to remove the west

ditch, but only because the diversion of water to the borrow pit prevented those with an interest in the Harrison ditch from suffering any detriment from the change.[1] I.C. § 42–1207; *Abbott,* 119 Idaho at 549, 808 P.2d at 1294. Harrison now stands in the shoes of his predecessor in interest. With the west ditch removed, obstructing the connection between the Harrison ditch and the borrow pit prevented those entitled to make use of the ditch from enjoying the full benefits of that right. Accordingly, we hold that the district court's order prohibiting Harrison from blocking or impeding the flow of water through any portion of the Harrison ditch was properly granted.

**D. Description Of The Easement**

Harrison argues the district court erred in failing to provide an adequate description of the easement being quieted in favor of the Association. Idaho law requires a judgment which affects an interest in real property to describe the interests with such certainty that rights and liabilities are clearly fixed. *Palmer v. Fitzpatrick,* 97 Idaho 925, 927, 557 P.2d 203, 205 (1976). In this instance, because we have reversed the district court's ruling quieting title in the ditch easement to Association, the question of how that easement is described is moot.

**E. Attorney Fees**

**1. Attorney Fees Below**

■ The Association argues the district court erred in failing to award it attorney fees below pursuant to I.R.C.P. 54(e)(1) and I.C. § 12–121. Idaho Rule of Civil Procedure 54(e)(1) "creates no substantive right to attorney fees, but merely establishes a framework for applying I.C. § 12–121." *Huff v. Uhl,* 103 Idaho 274, 277 n. 1, 647 P.2d 730, 733 n. 1 (1982). Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw Ins. Co. v. Pedersen,* 133 Idaho 135, 139, 983 P.2d

208, 212 (1999). The awarding of attorney fees and costs pursuant to I.C. § 12–121 is a matter within the discretion of a trial court and subject to review under the abuse of discretion standard. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 615, 726 P.2d 706, 727 (1986). In this instance the district court's determination that attorney fees would not be awarded was not an abuse of discretion.

**2. Attorney Fees On Appeal**

■ Arguing that Harrison's appeal is frivolous, and citing again to I.C. § 12–121, the Association requests an award of attorney fees on appeal. Harrison's appeal was not pursued frivolously, unreasonably, or without foundation; we therefore decline to award attorney fees to the Association.

**IV. CONCLUSION**

We affirm the district court's grant of injunctive relief to the Association, but reverse the lower court's ruling quieting title in the subject easement to the Association itself. The district court's decision not to award attorney fees below is affirmed. Neither costs nor attorney fees are granted on appeal.

Chief Justice SCHROEDER and Justices EISMANN, JONES and KIDWELL, Pro tem concur.

---

1. No arguments have been raised regarding the ownership of the land on which the borrow pit is located, nor the propriety of using that land to carry water spilling from the Harrison ditch. Consequently, this Court takes no position on those questions.