**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48773**

|  |  |  |
|---|---|---|
| MIGUEL AIZPITARTE and JANICE AIZPITARTE, husband and wife, | ) ) ) | |
| Plaintiffs-Respondents, | ) ) | Boise, February 2022 Term |
| v. | ) ) | Filed: May 3, 2022 |
| MICHAEL MINEAR and LAURA MINEAR, husband and wife, | ) ) ) ) | Melanie Gagnepain, Clerk |
| Defendants-Appellants. | ) ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Gem County. George A. Southworth, District Judge.

The district court judgment is affirmed.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, attorneys for Appellants. Eric Taylor argued.

Fisher, Hudson, Shallat, Boise, attorney for Respondents. Christopher Brown argued.

_____

BEVAN, Chief Justice

This appeal stems from a dispute between neighbors about whether an easement has been established by prior existing use for an access driveway. Miguel and Janice Aizpitarte sued Michael and Laura Minear to quiet title and sought a declaratory judgment to recognize their right to an implied easement by prior use.[1] They also sought injunctive relief enjoining the Minears from blocking access to the driveway. The Aizpitartes moved for summary judgment, which the district court granted. The district court concluded the Aizpitartes had an implied easement by prior use of the driveway crossing the Minear property to the Aizpitarte property. The Minears timely appealed. They argue the district court erred in granting summary judgment against them

_____

[1] During these proceedings, Michael Minear passed away. For clarity and continuity, this opinion will refer to "the Minears" collectively rather than refer to Laura Minear individually for certain arguments raised after Michael passed away.

1

because there were genuine issues of material fact in the record. They also argue the scope of the easement recognized by the district court was too broad. For the reasons explained below, we affirm the district court's decisions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

In 1990, Miguel and Janice Aizpitarte bought 17.67 acres of land in Emmett, Idaho. They partitioned the 17.67-acre parcel into four separate parcels in 1998. When they partitioned the land, they retained ownership of all four parcels. At that time, the Aizpitartes had Tri-County Surveying survey the land, which showed that Parcels 1, 2, and 3 were each five acres, and Parcel 4, which the Aizpitartes lived on, was 2.67 acres.

Two years later, in 2000, the Aizpitartes built and moved into a house on Parcel 2, where they now reside. The Aizpitartes built their house on the west side of the property abutting Lower Bluff Road. The Aizpitartes also constructed two gravel driveways from Lower Bluff Road when they built the house. They called these the "North Driveway" and the "South Driveway." The South Driveway is at issue here. The Aizpitartes used both driveways to access their property, which was otherwise surrounded by active farmland.

From 2000 to 2005, the Aizpitartes continued to use the South Driveway. Then, in 2005, they executed a warranty deed conveying Parcel 3 to Brian and Heather Gregory.[2] According to the 1998 partition and land survey, the South Driveway was situated upon and included within Parcel 3 when the Aizpitartes conveyed Parcel 3 to the Gregorys. Even so, the Aizpitartes were unaware of this when they sold Parcel 3. After learning the South Driveway was located on Parcel 3, the Aizpitartes and the Gregorys made an oral agreement reserving the Aizpitartes right to use the South Driveway. This arrangement remained in place for the approximately thirteen years that the Gregorys owned the property. The agreement was never put into writing or recorded.

In July 2018, the Gregorys sold Parcel 3 to Dr. Trent and Angela Giles. The Aizpitartes continued to use the South Driveway while the Gileses owned the property, but the Gileses never gave the Aizpitartes express permission to do so. Even so, Dr. Giles testified that he and Mrs. Giles allowed the Aizpitartes to use the property because they "thought it was neighborly to allow the

---

[2] While Brian and Heather Gregory bought the property together, only Brian provided a declaration for these proceedings. Thus, we will identify Brian separately as "Mr. Gregory" when discussing excerpts from his declaration.

Aizpitartes use of the driveway." In August 2019, the Gileses sold Parcel 3 to Michael and Laura Minear.

According to the Aizpitartes, when the Minears purchased Parcel 3, they had actual "or" constructive notice of the Aizpitartes' access easement to the South Driveway. Mrs. Minear disputes this, noting that at the time of purchase, neither she nor her husband were informed by the Gileses that the Aizpitartes claimed an easement and during her inspection she "did not see any activity along the [South D]riveway." When the Gileses and Minears signed the purchase and sales agreement, the Gileses signed an RE-25 Seller's Property Condition Disclosure Form. That form included the question: "[a]re there any conditions that may affect your ability to clear title such as encroachments, easements, zoning violations, lot line disputes, restrictive covenants, etc.?" The Gileses checked the box, answering "no." The disclosure form also asked: "[i]s there a private road to this property?" The Gileses again answered "no."

From August 2019 to November 2019, the Minears did not prohibit, question, or otherwise interfere with the Aizpitartes' access to the South Driveway. Then, in late November, the Minears obstructed the South Driveway by laying plastic piping along an irrigation ditch that ran the boundary length between the Aizpitarte and Minear properties. Despite the Aizpitartes' requests to access the South Driveway, the Minears refused. The Minears also planted a tree in a location obstructing the Aizpitartes' access to the South Driveway.

## B. Procedural Background

In March 2020, the Aizpitartes sent a formal demand letter to the Minears to restore access to the South Driveway. The Minears, through counsel, denied that the Aizpitartes had an easement and declined to recognize the easement over the South Driveway. Later, the Aizpitartes filed a complaint to quiet title to their claimed easement over the South Driveway and to enjoin the Minears from restricting their access. The Aizpitartes claimed an implied easement by prior use. The Minears answered and filed a third-party complaint against the Gileses. The Minears alleged in the third-party complaint that the Gileses were aware of the claimed easement and the Aizpitartes' use of the South Driveway, but willfully failed or neglected to inform the Minears.

Later, the Aizpitartes moved for summary judgment, asserting they had proved all three elements needed for an implied easement by prior use. The Minears objected and alleged the Aizpitartes did not satisfy any elements because they did not build the driveway until after they separated the parcels in 1998. The district court granted summary judgment to the Aizpitartes and

3

ordered a permanent injunction against the Minears. The district court also entered an order setting the scope of the easement as "unlimited reasonable use." The Minears later requested that the district court restrict the scope of the easement, which the court did twice—issuing two amended judgments--ultimately limiting the scope to "any reasonable and lawful use." The Minears timely appealed.

## II. STANDARDS OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *Owen v. Smith*, 168 Idaho 633, 640–41, 485 P.3d 129, 136-37 (2021) (citing *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209-10 (2019)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing the "materials cited do not establish the. . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." I.R.C.P. 56(c)(1)(B). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen*, 168 Idaho at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). "Even so, a 'mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.'" *Id*.

This Court freely reviews the record to determine whether the facts found, or stipulated to, are enough to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement. *Walker v. Hollinger*, 132 Idaho 172, 176, 968 P.2d 661, 665 (1998).

## III. ANALYSIS

The Minears challenge the district court's decision granting summary judgment to the Aizpitartes arguing that genuine issues of material fact precluded summary judgment and that the district court erred as a matter of law. The Minears also challenge the scope of the easement granted by the district court. For the reasons below, we affirm the district court's decision granting summary judgment to the Aizpitartes and its second judgment defining the scope of the easement.

An easement may be express or implied. *See Schultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976). This case involves an implied easement. To establish an implied easement by prior use, a party must prove three elements:

4

(1) unity of title or ownership and a subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before separation of the dominant estate to show that the use was intended to be permanent; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate.

*Spectra Site Commc'ns, Inc. v. Lawrence*, 160 Idaho 570, 574, 377 P.3d 75, 79 (2016) (citing *Bird v. Bidwell*, 147 Idaho 350, 352, 209 P.3d 647, 649 (2009). The owner of the dominant estate has the burden of proof "to show the existence of facts necessary to create by implication an easement" pertinent to their estate. *Davis v. Gowen,* 83 Idaho 204, 212, 360 P.2d 403, 408 (1961). This doctrine presumes that if an access was in use at the time of severance, such use was meant to continue. *Capstar Radio Operating Co. v. Lawrence*, 160 Idaho 452, 459, 375 P.3d 282, 289 (2016). The district court properly held that there was no genuine dispute of material fact regarding the three elements for an implied easement by prior use.

A.     **The district court properly determined there was apparent and continuous use of the South Driveway at the time of severance in 2005.**

It is undisputed that all this property was once under the common ownership of the Aizpitartes. Thus, the primary issue before us is the appropriate date of severance for parcels 2 and 3. Looking back from the time of severance, we can establish the relevant timeframe for continuous use. The Minears argue the district court erred as a matter of law when it determined that severance occurred in 2005 when Parcel 3 was sold to the Gregorys. The Minears contend the relevant focus must be the date of portioning when the 17.67-acre parcel was divided into four lots in 1998.

The basis for the implied easement by prior use doctrine provides the framework for our further analysis of this matter.

> Easements implied from prior use are based on the inferred intentions of the parties *involved in the severance of the unified estate into the purported dominant and servient estates* where the grantor and grantee are presumed to have intended, by viewing the grantor's obvious, continuous, preexisting use of the land in a particular way, to permanently include in the transaction any easement necessary for the continued proper and reasonable enjoyment of either the parcel transferred or the parcel retained." 25 Am. Jur. 2d *Easements and Licenses* § 22. Thus, "[a]n implied easement arises from a reasonable inference of what the original parties intended; the law thus implies what is necessary to achieve fairness to protect the dominant estate holder from his or her own failure to reserve the easement expressly." 25 Am. Jur. 2d *Easements and Licenses* § 22.

*Capstar*, 160 Idaho at 460, 375 P.3d at 290 (emphasis added). Thus, the attention on the prior continuous use must, by necessity, focus on the time that the unified estate was severed—which here is the 2005 sale from the Aizpitartes to the Gregorys.

5

To prove apparent continuous use, the common owner must use the claimed easement long enough *before severance* of the dominant and servient estate to show the easement was intended to offer permanent access to lands later severed. *See Cordwell v. Smith*, 105 Idaho 71, 80, 665 P.2d 1081, 1090 (1983). "The time that is legally relevant to the question of 'apparent continuous use' is the time the dominant and servient estates were severed." *Capstar*, 160 Idaho at 459, 375 P.3d at 289 (citing *Davis v. Peacock*, 133 Idaho 637, 642, 991 P.2d 362, 367 (1999)). This Court has said that "[t]he intent to grant or reserve the easement is presumed from apparent continuous use for a long period of time prior to that separation." *Bird*, 147 Idaho at 352, 299 P.3d at 649. "This doctrine presumes that if an access was in use at the time of severance, such use was meant to continue." *Capstar*, 160 Idaho at 459, 375 P.3d at 289. Taking all of this into account, the "time the dominant and servient estates were severed," *id*. at 459, 375 P.3d at 289, must begin our inquiry. Because the Aizpitartes' property once had unity of title, which the implied use doctrine requires, the date of severance can logically only refer to the date that unity of ownership ceased, as there can be no "dominant" and "servient" estate when there is unity of title. *See id.*

The district court properly relied on this authority, including our test from *Capstar* to determine that the Aizpitartes satisfied the "apparent, continuous use" element based upon the Gregorys' purchase of the property in 2005. That is the date that the dominant and servient estates were severed. The district court also correctly found that first, "the common owner must have used the premises and the system of roadways long enough to show that the roadways were intended to provide permanent access to those lands which are later severed." *Id*. (citing *Akers v. D.L. White Const., Inc.*, 142 Idaho 293 302, 127 P.3d 196, 205 (2005)). This requires some evidence that the easement was in use when the parcels were severed, and there was no longer unity of ownership. *See id.* at 460, 375 P.3d at 290. It does not, however, require that the use be continuous through the present day—if the use existed when the parcels were severed. *Id*. That said, "evidence of apparent and continuous use does not, in and of itself, create an implied easement. Rather, it is merely evidence of the presumed intent of the parties[.]" *Capstar*, 160 Idaho at 460–61, 375 P.3d at 290–91.

In the proceedings below, the Minears, along with the Gileses, focused on the Aizpitartes' use of the South Driveway in 2018-2019; however, as the district court found, this time was wholly irrelevant to the legal question presented here. The district court examined the declarations from the Minears, Gileses, Aizpitartes, and Mr. Gregory. It explained that even though the Gileses and

6

Minears declared they rarely witnessed the Aizpitartes use the easement in 2018, the legally relevant period was in 2005.

This is the correct conclusion because the severance occurred in 2005 when the Gregorys purchased Parcel 3. Until then, the Aizpitartes held unity of title. What happened in the years before 2005, particularly in 1998 when the Aizpitartes had the land surveyed and divided into four lots, is not determinative of the time of severance because the Aizpitartes still held unified title to all 17.67 acres, even though four separate lots were platted at that time. "[A] landowner cannot create an easement in his own land." *Capstar*, 153 Idaho at 420, 283 P.3d at 737. *See also Zingiber Inv., LLC, v. Hagerman Highway Dist.*, 150 Idaho 675, 681, 249 P.3d 868, 874 (2011) (quoting *Gardner v. Fliegel*, 92 Idaho 767, 771, 450 P.2d 990, 994 (1969)) ("'an easement is defined as a right in the lands of another, and therefore one cannot have an easement in his own lands.'").

While both the Aizpitartes and Mr. Gregory provided evidence establishing that the Aizpitartes continuously used the driveway in 2005, the Minears did not present any evidence to contest those facts. The district court determined that 2005 was the time of severance. We agree. The district court's analysis follows our case law:

> The time that is legally relevant to the question of "apparent continuous use" is the time the dominant and servient estates were severed. *Davis*, 133 Idaho at 642, 991 P.2d at 367. That is, the common owner must have used the premises and the system of roadways long enough to show that the roadways were intended to provide permanent access to those lands which are later severed. *Akers I*, 142 Idaho at 302, 127 P.3d at 205.

*Capstar*, 160 Idaho at 459, 375 P.3d at 289.

To that end, the Aizpitartes provided evidence to show that in 2005 when the Gregorys purchased Parcel 3, they were continually using the South Driveway. Even still, the district court examined testimony from the Minears and the Gileses, who both claimed the Aizpitartes used the driveway irregularly—but in 2018. The Gileses stated they "observed [the Aizpitartes] using the driveway on occasion." The Minears also disputed that the Aizpitartes' access was continuous. These facts, while they certainly create a dispute about the driveway's use in 2018-2019, do not preclude summary judgment because they apply to the wrong time frame.

Both parties point to *Capstar* to support their respective positions concerning the appropriate date of severance. The Minears contend that in *Capstar*, this Court held "the relevant time to the question of apparent continuous use was when the Funk property was severed in 1975." *Capstar*, 160 Idaho at 459, 375 P.3d at 289. The Aizpitartes counter that the Minears "cherry

7

pick[ed]" a single sentence from *Capstar* that was out of context to support their definition of severance. In contrast, the Aizpitartes suggest the next sentence in *Capstar* clarifies this Court's intent. There, this Court explained "the common owner must have used the premises and the system of roadways long enough to show that the roadways were intended to provide permanent access to those lands which are later severed." *Id.*

We agree with the district court's factual determination about when the land was severed for purposes of the implied easement. Based on that conclusion, the district court also found that the prior use was sufficient during the years before 2005 to establish what the second element required. There were no disputed facts before the district court that presented a question of fact about continuous use in the time preceding 2005. The Minears presented no factual dispute to challenge that in 2005, when Parcels 2 and 3 were severed, the Aizpitartes' use was continuous.

During that time frame, as Mrs. Aizpitarte testified, the South Driveway was used to (1) service the septic tank and well, (2) for firewood delivery to the woodshed, and (3) as access by a farming tenant on the eastern half of Parcels 2 and 3. Undisputed testimony from the Aizpitartes that they used the driveway each week is enough to establish continuous and apparent use. But they also provided testimony from Mr. Gregory who declared, "[d]uring the thirteen years that I lived next to the Aizpitartes, I witnessed them continually use [the driveway] on a weekly basis for a number of purposes." This unrebutted testimony is enough to support the district court's conclusion here. *See Akers*, 142 Idaho at 301–02, 127 P.3d at 204–05 (use of an easement just six times a year is enough to show continuous use if it "was consistent with the nature of the property at the time.").

After the district court ruled on summary judgment, the Minears moved for reconsideration and continued to argue that 1998, not 2005, was the proper time to consider when deciding when unity of title was severed. As discussed above, we previously answered this question in *Akers*, wherein this Court explained "the time that is legally relevant to the question of 'apparent continuous use' is the time the dominant and servient estates were severed. 142 Idaho at 302, 127 P.3d at 205. In *Akers*, severance occurred in 1966, the year the Millsaps sold the northern part of their property, Parcel B, to the Bakers. *Id.* at 297, 127 P.3d at 200. In that case, the district court considered the wrong year and determined the appellants did not show "apparent continuous use" because they did not show the access road at issue crossed the property in 1948. *Id.* at 302, 127 P.3d at 205. This Court explained that 1948 was the year appellants added Parcel B to their

8

holdings, which *created* common ownership, but did not *sever* it. *Id*. Because the district court considered the year the Millsaps added Parcel B to their holdings, not the year when the property was severed, this Court found it considered the wrong time—the proper consideration was 1966, when the Millsaps sold Parcel B and severed it. *Id*.

By extension, in *Davis v. Peacock*, this Court explained the first two elements of an implied easement by prior existing use were met because the disputed property originally had a common owner. 133 Idaho at 642, 991 P.2d at 367. This Court determined, "the land now owned by Peacock, which includes the disputed road, was severed from the property…when the Russells conveyed Blocks 9 and 10…to the Rawlings[.]" *Id.* at 642, 991 P.2d at 367.

Thus, consistent with *Akers* and its progeny, we reiterate that severance refers to the creation of a dominant and servient estate when unity of title ends —not the time of partition by a common owner. *See also Capstar*, 160 Idaho at 460, 375 P.3d at 290 (recognizing that severance occurs when there is a unified estate separated into a dominant and servient estate). This is supported by sound policy rationale: Common owners do not need permission from themselves to use their own land. *See also* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 (2000) (this rule "furthers the policy of protecting reasonable expectations, as well as actual intent, of parties to land transactions. It also promotes efficient use of resources…").

Here, the Aizpitartes retained common ownership of Parcels 2 and 3 until 2005 when they sold Parcel 3 to the Gregorys. Because the Minears did not dispute that the Aizpitartes' use was apparent and continuous beginning in 2005 and continuing for more than a decade with admissible evidence, there was no genuine issue of material fact on this element. Instead, there was merely a question of law on the proper time to consider, which the district court properly resolved.

**B.     The district court did not err in finding there was a reasonable necessity for an easement.**

The Minears next argue that when the Aizpitartes severed the parcels in 1998, there was no reasonable necessity for the Aizpitartes because there was no South Driveway. The Minears also suggest the Aizpitartes cannot show access to the South Driveway was reasonably necessary because the Aizpitartes had alternative access to the property using the North Driveway.

We note that while the Aizpitartes made a jury demand in this case, "[i]t is generally recognized that the constitutional right to a jury trial applies only to legal claims and not equitable claims." *Ada County Highway Dist. v. Total Success Investments, LLC*, 145 Idaho 360, 369, 179

9

P.3d 323, 332 (2008). Actions to quiet title and injunctive relief are equitable, and "there is no right to a jury trial for equitable actions." *Id.* The jury demand remains available for money damages—a legal remedy. While the district court is constrained from drawing inferences when issues will be before a jury because evidentiary facts, though undisputed, may yield conflicting inferences about the ultimate issues in the case, here the district court is the trier of fact as to the issues before us. *Lundy v. Hazen*, 90 Idaho 323, 326, 411 P.2d 768, 770 (1966). In such cases, where there are no disputed facts, the district court is not constrained to draw inferences in favor of the party resisting summary judgment. *Riverside*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982).

The district court examined the declarations from the Aizpitartes, the Gileses, and Mr. Gregory. The Aizpitartes declared the driveway was reasonably necessary because accessing that part of their property "has always been difficult due to soil moisture and flooding issues." Mr. Gregory's declaration confirmed this when he explained the property "is often saturated, swampy and difficult to travel through." The district court considered the testimony from the Gileses, but found that beyond one statement in the declaration that the Aizpitartes "could access their property from the north driveway of their property[,]" the Minears provided no contradicting facts relevant to the 2005 period.

A court looks to the time the dominant and servient estates were severed when deciding whether there was a "reasonable necessity." *Akers*, 142 Idaho at 302, 127 P.3d at 205. For an implied easement from prior use, "reasonable necessity is something less than the great present necessity required for an easement implied by necessity." *Id.* (quoting *Davis*, 133 Idaho at 643, 991 P.2d at 368. The court looks to the time when the dominant and servient estates were severed to decide reasonable necessity, not the present. *Id.*

Strict necessity is not needed to establish an implied easement by prior use. *Davis*, 133 Idaho at 642–43, 991 P.2d at 367–68. Rather, the party seeking to establish the easement need only prove reasonable necessity, "something less than the great present necessity required for an easement implied by necessity." *Id.* at 643, 991 P.2d at 368. "When determining whether such 'reasonable necessity' existed, a court does not look to the present moment, but instead determines whether reasonable necessity existed at the time the dominant and servient estates were severed." *Akers*, 142 Idaho at 302, 127 P.3d at 205. Then, once an implied easement from prior use is created, it "is not later extinguished if the easement is no longer reasonably necessary." *Beach Lateral Water Users Ass'n v. Harrison*, 142 Idaho 600, 605, 130 P.3d 1138, 1143 (2006) (quoting *Davis*,

10

133 Idaho 642, 991 P.2d at 367). Because an implied easement from prior use requires only reasonable necessity, not great present necessity, there is no requirement that the dominant estate be landlocked. *Davis*, 133 Idaho at 643, 991 P.2d at 368.

The Minears suggest Dr. Giles and Mrs. Minear gave testimony that established a disputed issue of material fact because their testimony contradicts testimony given by Mr. Gregory and the Aizpitartes. The Minears first point to the testimony of Dr. Giles: "[d]uring the time we lived in the residence, Mr. and Mrs. Aizpitarte could access the property from the North Driveway." Next, Mrs. Minear testified: "plaintiffs can and do access their residence and property through a driveway on the north side of their property."

The Aizpitartes counter that the fact they *could* use the North Driveway does not raise a genuine issue of material fact about whether the South Driveway was reasonably necessary. The Gileses and Minears do not dispute that the North Driveway is prone to flooding and would not allow a vehicle or farm equipment to turn around without driving into a muddy field. The Aizpitartes suggest that if this case were about an implied easement by necessity, the Minears may have raised a genuine issue of material fact. But this is not that case. The Aizpitartes argue there is no disputed issue of material fact from the facts the Minears presented.

We agree with the Aizpitartes. First, as with the previous elements, the Minears' focus is on the wrong timeframe. While they correctly point to disputes in the testimony among themselves, the Aizpitartes, the Gileses, and Mr. Gregory about whether there was a reasonable necessity to access the property in 2018-2019, none of that testimony addresses the Aizpitartes' access in 2005, nor their need to use both driveways at that time.

Second, as we explained above, because the district court is not constrained to draw inferences in favor of the party resisting summary judgment when the facts are not in dispute, the court need not conclude that merely because the Aizpitartes may have alternative access to portions of their property using the North Driveway, the South Driveway is not also reasonably necessary. Reasonable necessity is "something less than" great present necessity. *Beach Lateral*, 142 Idaho at 605, 130 P.3d at 1143 (citing *Davis*, 133 Idaho at 643, 991 P.2d at 368); *See Davis*, 133 Idaho at 643, 991 P.2d at 368 ("unlike an easement by way of necessity, an implied easement by prior use is not later extinguished if the easement is no longer reasonably necessary."). This "something less" is more than satisfied on the facts here. Whether the Aizpitartes can access their property via the North Driveway does not raise a genuine issue of fact about whether the South Driveway is

11

also reasonably necessary for them to access other portions of their property, particularly the septic tank.

On appeal, the Minears rely on several cases to show where this Court has held an easement by implication has failed because there was not a reasonable necessity. *See Trunnel v. Ward*, 86 Idaho 555, 560, 389 P.3d 221, 223 (1964), (alternative means of ingress and egress to and from the property, meant the easement was not reasonably necessary); *Bear Island Water Ass'n v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994), (there was no reasonable necessity for an easement to access a well when the party seeking the easement did not present facts that showed why the party could not drill a diversion to another well).

The Aizpitartes alternatively point to *Thomas v. Masden,* 142 Idaho 635, 132 P.3d 392 (2006) for instruction. There, Thomas testified that wet conditions in his adjoining field required him to build a foundation for a new road. *Id.* at 638, 132 P.3d at 395. The district court found that constructing a new road would require considerable time and expense, and found the claimed easement was reasonably necessary to proper enjoyment of his property. *Id.* at 639, 132 P.3d at 396. This Court affirmed the district court, concluding substantial and competent evidence supported it. *Id*. The Aizpitartes also rely on *Machado v. Ryan*, 153 Idaho 212, 280 P.2d 715 (2012) to support the proposition that courts must balance the convenience, inconvenience, cost, and other facts to decide whether reasonable necessity exists. Even if there is another access point, the Aizpitartes contend reasonable necessity may exist because of the nature of the property.

The Aizpitartes established they have struggled with the same wet conditions and relied on the South Driveway and gravel road for two decades to support and repair essential portions of their property that would otherwise be inaccessible. Mrs. Aizpitarte testified: "[a]t all times since Miguel and I built our home in 2000, the South Driveway has been reasonably necessary to access, repair, and maintain the eastern and southern portions of the Aizpitarte Property." She also asserted: "the South Driveway was reasonably necessary for…[p]roviding vehicle access (entrance and egress) to areas of the Aizpitarte Property…" This was supported with testimony from Mr. Gregory, who explained the Aizpitarte property "is often saturated, swampy, and difficult to travel through."

From these facts, and considering authority cited by both parties, we conclude the district court did not err in its legal analysis. The district court properly considered whether there was a reasonable necessity for the easement in 2005. This Court explained in *Capstar* that testimony

from witnesses suggesting a disputed road was the only way to access a tower site was not relevant when the question was whether reasonable necessity existed *at the time* the dominant and servient estates were severed. *Capstar*, 160 Idaho at 461, 375 P.3d at 291; *see also Beach Lateral*, 142 Idaho at 605, 130 P.3d at 1143 ("a court…determines whether reasonable necessity existed at the time the dominant and servient estates were severed."). Here, the relevant inquiry is whether reasonable necessity existed in 2005, not in 2018 or 2019.

While Mrs. Minear presented testimony about reasonable necessity in 2020, she failed to testify about the necessity that existed through the lengthy time before and after 2005. For example, Mrs. Minear testified: "I have never seen [the Aizpitartes] or anyone on their behalf use our driveway at any time after we purchased the property in August, 2019. I had no idea [the Aizpitartes] claimed an easement along the [N]orth [D]riveway until November, 2019[.]" The Gileses testified only that the Aizpitartes "could access their property from the north driveway of their property," but they put forth no more than a mere scintilla to contradict the Aizpitartes' assertion that the easement was reasonably necessary. This testimony is insufficient to rebut the facts established by the Aizpitartes from 2005. *See Jones v. Lynn*, ___ Idaho ___, 498 P.3d 1174, 1180 (2021) (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210) (a "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.").

As a result, the district court did not err in resolving probable inferences as it did—or in granting summary judgment because there was not conflicting evidence, leaving only a question of law about whether the easement was reasonably necessary.

## C.     The district court did not err in establishing the scope of the implied easement from prior use.

The Minears next argue that if this Court upholds the easement, we should narrow the scope to the Aizpitartes' specific uses in 2005. The Aizpitartes counter that the district court already limited the scope in two amended judgments. The Aizpitartes contend it is disingenuous for the Minears to argue that the district court expanded the easement's scope when the court issued two amended judgments limiting the scope.

"It is well established in this jurisdiction that an easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Abbott v. Nampa Sch. Dist. No.* 131, 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991)

13

(internal citations omitted). Even so, an easement should not impose a greater burden on the servient estate than is reasonably necessary. *Conley v. Whittlesey*, 133 Idaho 265, 270, 985 P.2d 1127, 1132 (1999). "[T]he general rule concerning easements is that the right of an easement holder may not be enlarged and may not encompass more than is necessary to fulfill the easement." *Abbott*, 119 Idaho at 548, 808 P.2d at 1293 (internal citations omitted). Still, "an implied easement entitles the easement's owner to reasonable use of that easement." *Capstar*, 160 Idaho at 464, 375 P.3d at 294 (internal citations omitted). An easement may not be enlarged to the injury of the servient estate. *Vill. Condo. Ass'n., Inc. v. Idaho Power Co.*, 121 Idaho 986, 988, 829 P.2d 1335, 1337 (1992). "A judgment which affects an interest in real property must describe the interests with such certainty that rights and liabilities are clearly fixed." *Palmer v. Fitzpatrick*, 97 Idaho 925, 927, 557 P.2d 203, 205 (1976) (citing *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961)).

Below, in the district court's first decision on the scope of the easement, it found the scope was for "unlimited reasonable use." The Minears moved for reconsideration and asked the court to review the easement's scope. They argued the court's original pronouncement was overly broad and went beyond enjoining the Minears from allowing the Aizpitartes unlimited use. The district court agreed with the Minears and issued an amended judgment and restricted the easement's scope to "reasonable use without limitation." The district court then issued a second amended judgment and further constrained the scope to "any reasonable and lawful use" of the property. On appeal, the Minears maintain that easement's scope should be narrowed even further. The Minears urge this Court to limit the scope of the implied easement to its historical use when the Aizpitartes created the easement, as specified in Mrs. Aizpitarte's declaration.

First, we note that while "[t]he scope of a *prescriptive easement* is fixed by the use made during the prescriptive period," *Beckstead v. Price*, 146 Idaho 57, 64–65, 190 P.3d 876, 883–84 (2008) (emphasis added), an easement by prior use is much different. "[T]he scope of the implied easement by prior use is for unlimited reasonable use." *Spectra*, 160 Idaho at 575, 377 P.3d at 80. As noted in *Spectra*, "there is no authority for limiting an implied easement . . . ." *Id.*

The policy rationale behind limiting the scope of prescriptive easements to their historical use supports this difference in application because "[p]rescription acts as a penalty against a landowner[.]" Because of that, whoever holds a prescriptive easement "may not use it to impose a substantial increase or change of burden on the servient tenement." *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977) (internal quotations omitted). Thus, when these

14

easements are established, the "scope of a prescriptive easement is determined by the use through which it is acquired." *Latvala v. Green Enterprises, Inc.*, 168 Idaho 686, 702, 485 P.3d 1129, 1145 (2021) (quoting *Gibbens*, 98 Idaho at 638, 570 P.2d at 875)). By their nature, prescriptive easements are attained through adverse use; limiting the extent of the easement serves to protect the landowner. On the other hand, an implied easement by prior existing use exists only if the claimant owned both parcels and intended to grant or reserve the easement at the time of severance. Permitting "reasonable and lawful use" in such cases facilitates use of the land while limiting the scope to what is reasonably necessary for the proper enjoyment of the dominant estate.

Second, this Court rejected the Minears' historical use argument in *Capstar*. There, the Lawrences argued the district court erred by setting the scope for "unlimited reasonable use." *Capstar*, 160 Idaho at 464, 375 P.3d at 294. The district court determined that "as long as the use of the easement is reasonably necessary to provide access to the properties…this court declines the invitation to impose restrictions…." *Id*. As with the Minears, the Lawrences argued the proper scope for an implied easement was limited to the historical use of the easement. *Id.* This Court affirmed the district court's decision setting the scope of the implied easement as unlimited reasonable use. *Id.*

While we recognize that historical use is traditionally applied to limit the scope of prescriptive easements, as was the case in *Beckstead*, the elements of prescriptive easements are distinct from easements by prior use. We "decline [ ] the invitation to impose restrictions at this stage of the proceedings." *Spectra*, 160 Idaho at 575, 377 P.3d at 80 (quoting at *Capstar*, 160 Idaho at 464, 375 P.3d at 295).

The district court here modified the scope of the easement from its initial "unlimited reasonable use" to "reasonable and lawful use," which is more restricted than the "unlimited reasonable use" upheld in both *Capstar* and *Spectra*. We thus hold the district court did not err in determining the scope of the implied easement by prior use is for a reasonable and lawful use.

**D.    The district court properly declined to consider whether a property owner's actions can create the need for an implied easement.**

The Minears argue the Aizpitartes created any necessity to use the South Driveway by their own actions and thus they are not entitled to an easement. The Aizpitartes counter that the district court properly refused to consider whether the Aizpitartes created the need for an implied easement for two reasons. First, a landowner's creating the necessity of an easement is only material to the

15

analysis of implied easement by necessity. And second, the Minears did not brief the issue on summary judgment.

Property owners cannot create a necessary easement through their own actions. *B & J Dev. and Inv., Inc. v. Parsons*, 126 Idaho 504, 507, 887 P.2d 49, 52 (Ct. App. 1994) (citing *Cordwell*, 105 Idaho at 80, 665 P.2d at 1090.) In *Machado*, this Court said, "[a] party asserting an easement by necessity may not create the necessity through his or her own actions." *Id*. at 220, 280 P.3d at 723.

That said, an implied easement by necessity is distinct from an implied easement by prior existing use. Below, the district court noted this distinction in its memorandum decision:

> During oral argument, the Minears spent a considerable amount of time on this point discussing case law and facts relevant to an implied easement by necessity. . . .However, an implied easement by necessity has different requirements, none of which are at issue here because the Aizpitartes have not claimed an implied easement by necessity. . . Accordingly, the [c]ourt disregards these arguments as they do not apply to the discussion of the establishment of an implied easement by prior use.

In the Aizpitartes' complaint, count one sought to quiet title to the driveway and alleged the Aizpitartes established an implied easement by prior existing use. While the second and third elements for an implied easement by necessity require, as its name suggests, a "necessity," that necessity does not equate with what is needed to establish an easement in this case. In fact, there are several distinctions between implied easements by prior use and implied easements by necessity—particularly in how they are created and how they are extinguished.

To show an implied easement by necessity, the claimant "must prove '(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement.'" *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009) (quoting *Bear Island*, 125 Idaho at 725, 874 P.2d at 536).

We have held that reasonable necessity can satisfy the second element, but "great present necessity" is required to establish the third element. *Machado*, 153 Idaho 212, 219, 280 P.3d 715, 722 (2012). When deciding whether reasonable necessity exists, the district court must "balance the respective convenience, inconvenience, costs, and other pertinent facts." *Id*. (quoting *Thomas*, 142 Idaho at 638, 132 P.3d at 395). At the same time, great present necessity exists when the easement is the *only* access to the claimant's property. *Id.* at 220, 280 P.3d at 723 (citing *Brown v. Miller*, 140 Idaho 439, 443, 95 P.3d 57, 61 (2004) (emphasis added)). We explained this distinction

16

in *Bear Island* when we said that establishing an easement by necessity required an "even weightier showing of a great present necessity for the easement" than the reasonable necessity required for an easement by prior existing use. 125 Idaho at 725, 874 P.2d at 536.

Among the differences between implied easements by prior use and implied easements by necessity are the way these easements are extinguished. While an implied easement by necessity requires great present necessity to create it, the easement is also extinguished if that necessity abates. *Davis*, 133 Idaho at 643, 991 P.2d at 368. That said, it is well-established that an implied easement by prior use is not later extinguished just because it is no longer reasonably necessary. *Id*. The reason for this is that "[w]hen ascertaining whether 'reasonable necessity' existed, a court looks not to the present time, but instead determines whether reasonable necessity existed at the time the dominant and servient estates were severed." *Beach Lateral*, 142 Idaho at 605, 130 P.3d at 1143 (citing *Davis*, 133 Idaho at 642, 991 P.2d at 367).

Nowhere in the record does either party argue this was an implied easement by necessity. While the district court noted that the Minears discussed case law related to an implied easement by necessity, neither party suggested this was such a case. And because implied easement by necessity was not the action pled below, we hold the district court correctly disregarded the arguments below, and the Minears did not properly preserve it for appeal.

**E.      The district court did not err in concluding that whether the Aizpitartes used the South Driveway with permission was irrelevant to an easement by prior use.**

The Minears assert the Aizpitartes had permission from Mr. Gregory to use the South Driveway, which undercuts the district court's decision. Gregory admits he orally agreed with the Aizpitartes to allow them to use the South Driveway. The Gileses claim they also allowed the Aizpitartes to use the driveway at times. Even so, the Aizpitartes counter that the district court correctly relied on *Capstar*, *Akers*, and *Davis* to conclude that none of the elements for an implied easement by prior use requires adverse use.

The Minears respond that while permission or lack thereof may not be an element of easement by implication, it is still a consideration whether the Aizpitartes established the right to their easement. The Minears urge this Court not to turn a neighborly act into an easement for the Aizpitartes across the Minears' property. The Minears conclude that whether the Aizpitartes had permission to use the South Driveway is a question of material fact that should have precluded summary judgment.

17

A claimant seeking to prove a *prescriptive* easement must establish the use is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period." *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006). Permission to enter on the land is thus relevant to cases involving prescriptive easements. Such permission would defeat a prescriptive easement because the land use would not be adverse as is required to establish such an easement. That said, these elements differ significantly from an implied easement by prior use, which does not require adverse use.

The district court explained that whether the Aizpitartes had permission to use the South Driveway would be relevant if the court were considering "an easement by prescription which requires adverse use. . . ." But the district court noted that for an easement by prior existing use, the party need not prove adverse use nor do neighborly accommodations supply a defense. In this regard, we agree.

Whether the Aizpitartes used the South Driveway with permission is not a material fact because permissive use is not a material element of their claim. As a result, the district court correctly concluded it was irrelevant whether the Aizpitartes had permission to continue use of the South Driveway.

**F.     Neither party is entitled to attorney fees on appeal.**

The Minears ask for attorney fees under Idaho Appellate Rule 41 and Idaho Code section 12-121. The Minears argue the Aizpitartes' complaint is unreasonable and without foundation because it was unjust to place an easement on the Minears' property where nothing was in writing, nothing was recorded, and no notice was given. The Aizpitartes request attorney fees and costs under Idaho Appellate Rule 41, I.R.C.P. 54(d)(1), and Idaho Code sections 12-107 and 12-121. The Aizpitartes maintain this appeal is without legal or factual foundation because the facts and ensuing rulings in the cases cited uniformly mandate a result that conflicts with the Minears' conclusions.

Idaho Code section 12-121 allows attorney fees in a civil action if the appeal merely invites the Court to second-guess the findings of the lower court. *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021) (citing *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010)). Attorney fees may also be awarded under section 12-121 "if the appeal was brought or defended

frivolously, unreasonably, or without foundation." *Id.* at 647–48, 485 P.3d at 143–44. An award of fees under section 12-121 is within this Court's discretion. *Id.*

We decline to award attorney fees because the Minears and the Aizpitartes presented colorable arguments about the district court's ruling, and thus the appeal was not brought or defended frivolously. As a result, attorney fees under section 12-121 are not appropriate. Because Aizpitartes prevail on appeal, they are entitled to costs. I.C. § 12-107; *Big Wood Ranch, LLC v. Water Users' Ass'n of Broadford Slough & Rockwell Bypass Lateral Ditches, Inc.*, 158 Idaho 225, 233, 345 P.3d 1015, 1023 (2015).

## VI. CONCLUSION

We affirm the district court's decision granting summary judgment to the Aizpitartes, including its second amended judgment of defining the scope of the Aizpitartes' easement. Neither party is entitled to attorney fees. As the prevailing party, the Aizpitartes are entitled to costs as a matter of right.

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR.